**Adolphus CARROLL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–00–161–CR.**

Court of Appeals of Texas, Waco.

Aug. 15, 2001.

Stan Schwieger, Law Office of Stan Schwieger, Waco, for appellant.

John W. Segrest, McLennan County Criminal District Attorney, James Wiley, McLennan County Assistant District Attorney, Waco, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

GRAY, Justice.

Adolphus Carroll was convicted of being a felon in possession of a firearm. The jury found him to be a habitual felon and sentenced him to 65 years in prison. Carroll appealed. We affirm the judgment of the trial court.

### FACTS

Officer Clifford Hoida, of the Waco Police Department, worked off-duty at a local HEB grocery store as armed security. On the evening of November 2, 1998, a hysterical woman approached Hoida at the south entry door of the HEB. She was very emotional and was shaking. She told Hoida that she had seen a black male with a chrome gun which he had stuck in his waistband. The man was wearing a green-colored shirt and was a passenger in a brown Cadillac with a dark brown roof. The woman pointed and said the Cadillac was parked in the store's parking lot.

Hoida immediately located a brown Cadillac with a dark brown roof in the parking lot in the direction the woman had been pointing. Testimony conflicted at trial about the color of the Cadillac. Carroll and Sherry Lewis, the owner/driver of the Cadillac, testified that the car was gold-colored, not brown. Hoida approached the vehicle, which was unoccupied at the time, and tried to look in the windows. The vehicle had dark, tinted windows which made it difficult to see the interior. Hoida was concerned that the man was carrying the gun in the grocery store, possibly to rob the store or to hurt someone. He went back to the woman who reported the incident. She gave him more information about the man. She said he was about 6 feet tall and around thirty years old.

Hoida did not take down the woman's name or phone number. He did not take the opportunity to do so because he was more concerned about where the suspect was. He was concerned that a robbery might occur.

Hoida decided to call the Waco Police Department for assistance. Commander Aleman, Officer Forward, and Officer Cavazos arrived shortly thereafter in separate vehicles. Aleman arrived in an unmarked police unit. They discussed how to handle the situation if they saw the suspect. While in discussion, the suspect, later identified as Carroll but using the false name, Clem Hunter, walked out of the store. Hoida saw a black man, 6 feet tall and around thirty years old, walking with a black woman toward the brown Cadillac. The man was wearing a green-

striped shirt. Hoida believed Carroll fit the description the woman had given him. The color of the shirt Carroll was wearing was another contested issue. While Hoida believed it to be at least partially green, Lewis said it was tan with a black collar, and Carroll said it was off-white with blue and red stripes and a dark blue collar.

The officers had first decided that, for safety reasons, they would check the store, watching out for the citizens in it. Then, when Carroll came out, they decided to confront him in the vehicle rather than in the parking lot. They believed this would limit any gunfire to the vehicle.

Carroll entered the passenger side of the Cadillac. Sherry Lewis was driving. The officers waited until the Cadillac began to back out of the parking space. Aleman pulled his vehicle in front of the Cadillac while Forward pulled up behind it. Hoida approached the passenger side on foot. He removed his weapon, opened the door of the Cadillac, pointed his weapon at Carroll, and advised him to keep his hands where the officer could see them. Hoida told Carroll he had a report that Carroll had a gun, took Carroll out of the vehicle, and handcuffed him. Carroll responded that he no longer had the gun, that he had given it to someone else. At trial, Carroll denied making this statement. He claimed he said, "It was not me; must have been someone else." Hoida stated that Carroll was not under arrest at the time he was handcuffed. He handcuffed Carroll for the safety of himself and everyone around. Hoida considered the stop temporary.

Carroll was then patted down for weapons, and none were found. However, Hoida felt what he believed, from training and experience, to be a bullet in Carroll's left front pocket. He retrieved the bullet, inspected it, and determined it was a .380 caliber bullet. When Hoida informed the

other officers that he found a .380 caliber bullet, Carroll volunteered, "Yeah, it is a .380." At trial, Carroll explained that the bullet found in his pocket had been in a cup-holder in the car. He picked it up, but did not remember putting it in his pocket.

Another officer conducted a search of the front passenger area of the Cadillac. While the officer searched the glove box area, Carroll "eyeball[ed] real hard" that area which made Hoida suspect something was there. Hoida then rechecked the glove box area. He got on his knees and looked under the dash. He saw a gun jammed up underneath inside the dash board. It was a silver-looking, semi-automatic .380 pistol. The serial number had been scratched out. The gun matched the description given to Hoida by the woman who had approached him earlier. The clip was not in the gun, but was discovered under the dash as well. Four bullets were located in the clip. One bullet was discovered in the chamber of the gun.

Carroll gave his name as Clem Hunter. The officers checked his criminal history, but found no history. Hoida told Carroll that he was being arrested for the felony offense of unlawful carrying a weapon on a licensed premise. HEB is licensed to sell alcohol. Carroll asked if he had not taken the gun inside, would the offense still be a felony. Hoida then assumed that Carroll had taken the gun into the HEB. Carroll testified at trial that this question was only a hypothetical question.

After Carroll bonded out on this charge, the authorities learned Carroll's true identity. Carroll was also wanted for parole violations and for the offense of escape. Clem Hunter was the name of Carroll's cousin. Carroll knew he was wanted, so he used his cousin's name. He routinely used Hunter's name when he was wanted by the police.

Sherry Lewis also told police that Carroll's name was Clem Alonzo Hunter and that he was her boyfriend. She testified at trial that she had lied. She knew Carroll's name and said he was not her boyfriend. At trial, she claimed the Cadillac and the gun found in it were her possessions. She stated she was given the gun for protection after a burglary occurred at her apartment. She explained that the gun was stuck under the dash because her car doors did not lock. She also explained that she did not tell the police, or anyone in authority, that the gun was hers because she had five children at home.

### INEFFECTIVE ASSISTANCE

In one issue, Carroll complains that his counsel at trial was ineffective and that he should receive a new trial.

■ In assessing the effectiveness of counsel, we apply the test set forth by the Supreme Court in *Strickland v. Washington. Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 988 S.W.2d 770, 772 (Tex.Crim.App.1999); *Ex parte Jarrett,* 891 S.W.2d 935, 938 (Tex.Crim. App.1994). *Strickland* requires us to determine whether:

(1) counsel's performance was deficient; and if so,

(2) whether there is a reasonable probability the results would have been different but for counsel's deficient performance.

*Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

■ Generally, we examine the totality of the representation in gauging the effectiveness of counsel. *Ex parte Raborn,* 658 S.W.2d 602, 605 (Tex.Crim.App. 1983). In some situations however, a single omission on counsel's part can be considered ineffective assistance. *Ex parte Felton,* 815 S.W.2d 733, 735 (Tex.Crim.

App.1991); *Pena–Mota v. State,* 986 S.W.2d 341, 344 (Tex.App.—Waco 1999, no pet.). An appellant bears a "tremendous burden" in proving ineffective assistance of counsel. *Shilling v. State,* 977 S.W.2d 789, 791 (Tex.App.—Fort Worth 1998, pet. ref'd). Allegations of ineffective assistance of counsel must be firmly founded in the record. *Beheler v. State,* 3 S.W.3d 182, 185–186 (Tex.App.—Fort Worth 1999, pet. ref'd). We strongly presume that counsel's conduct lies within the "wide range of reasonable representation." *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim. App.1996). Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *Beheler,* 3 S.W.3d at 185.

*MOTION TO SUPPRESS*

■ Carroll specifically contends that his trial counsel was ineffective because he failed to file a motion to suppress the handgun that was seized and used against him at trial. To successfully argue that the failure to file a motion to suppress amounted to ineffective assistance, Carroll must show that the motion would have been granted. *Jackson v. State,* 973 S.W.2d 954, 957 (Tex.Crim.App.1998); *Vaughn v. State,* 931 S.W.2d 564, 566 (Tex. Crim.App.1996).

■ When a defendant seeks to suppress evidence on the basis of an illegal search or seizure, the burden of proof is placed initially upon the defendant. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim. App.1986); *Mattei v. State,* 455 S.W.2d 761, 765–66 (Tex.Crim.App.1970). As the movant in a motion to suppress evidence, a defendant must produce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State. *Jackson,* 973 S.W.2d at

957; *Russell,* 717 S.W.2d at 9. A defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant. *Russell,* 717 S.W.2d at 9. Once a defendant has established that a search or seizure occurred and that no warrant was obtained, the burden of proof shifts to the State. *Id.* If the State is unable to produce evidence of a warrant, then it must prove the reasonableness of the search or seizure. *Id.* at 10.

*Standing*

■ A defendant also bears the burden of proving his own privacy rights were violated; that is, that he has standing to contest the search or seizure. *State v. Klima,* 934 S.W.2d 109, 111 (Tex. Crim.App.1996); *Flores v. State,* 871 S.W.2d 714, 719 (Tex.Crim.App.1993). In the absence of any evidence showing that a passenger in a vehicle has a legitimate expectation of privacy in the vehicle or possessory interest in the property seized, the passenger has no standing to contest the search of the vehicle. *Flores,* 871 S.W.2d at 720; *Meeks v. State,* 692 S.W.2d 504, 510 (Tex.Crim.App.1985); *State v. Allen,* 53 S.W.3d 731 (Tex.App.—Houston [1st Dist.] 2001). However, a passenger can challenge the search of a vehicle in which he is riding if the search resulted from an infringement, such as an illegal detention, of the passenger's Fourth Amendments rights. *Lewis v. State,* 664 S.W.2d 345, 348 (Tex.Crim.App.1984).

■ At trial, Sherry Lewis claimed the Cadillac and the gun were hers. Carroll testified and did not controvert Lewis's claims. Thus, he claimed no expectation of privacy and would have no standing to contest the search. Carroll claims, however, that his Fourth Amendment rights were violated because Lewis's Cadillac was blocked in by police without reasonable suspicion or probable cause. If his Fourth Amendment rights were indeed violated, Carroll would have standing to contest the search.

*The Stop*

■ The Fourth Amendment does not forbid all seizures, just unreasonable seizures. *See Rhodes v. State,* 945 S.W.2d 115, 117 (Tex.Crim.App.1997). A police officer is generally justified in briefly detaining an individual on less than probable cause for the purposes of investigating possible criminal behavior where the officer can point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Carmouche v. State,* 10 S.W.3d 323, 328 (Tex.Crim.App.2000). That is, the officer must show reasonable suspicion that the individual is connected to criminal activity. *State v. Larue,* 28 S.W.3d 549, 553 n. 8 (Tex.Crim.App.2000). The same standards apply whether the person detained is a pedestrian or is the occupant of an automobile. *Carmouche,* 10 S.W.3d at 328. Reasonable suspicion is not only based on the officer's personal observations but also can be supplied by other persons. *Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

■ An otherwise valid stop is not rendered unreasonable merely because the suspect's car is boxed in by police, or because weapons are drawn, or because the suspect is handcuffed. *Rhodes,* 945 S.W.2d at 117. The reasonableness of a stop must be examined in terms of the totality of the circumstances. *Woods v. State,* 956 S.W.2d 33, 38 (Tex.Crim.App. 1997); *Garcia v. State,* 967 S.W.2d 902, 904 (Tex.App.—Austin 1998, no pet.). Officers may use such force as is necessary to effect the goal of the stop: investigation,

maintenance of the status quo, or officer safety. *Rhodes*, 945 S.W.2d at 117. Allowances must be made for the fact that officers must often make quick decisions under tense, uncertain, and rapidly changing circumstances. *Id.*

### Application

■ Based on the totality of the circumstances, the stop of the Cadillac was not unreasonable. A police officer at a grocery store received a report, in person, of a man carrying a weapon who had been a passenger of a Cadillac. The Cadillac proved to be in the store's parking lot. The officer feared a robbery and feared for his safety and for the safety of everyone around and in the store. Within a few minutes of the report, a man fitting the description given exited the store and entered the passenger side of the Cadillac. Before it could leave, police blocked the Cadillac. Even though the woman who reported the gun was not identified, there is nothing in this record to show the information given was not reliable. Given the surrounding circumstances, the officers used the amount of force necessary to effect the goal of the stop: investigation and officer safety.

### Holding

We hold the Cadillac was not stopped without reasonable suspicion, and thus, the stop was not illegal. Because the car was not his and the stop was not illegal, Carroll does not have standing to challenge the search of Lewis's Cadillac. Because he has no standing to challenge the search, a motion to suppress would not have been granted. Because a motion to suppress would not have been granted, Carroll's trial counsel was not ineffective for failing to file one. Carroll's sole issue is overruled.

### Conclusion

Having overruled Carroll's only issue for review, the trial court's judgment is affirmed.