**The STATE of Texas, Appellant,**

**v.**

**Michael Dwain CRISP, and Ray Brian Uloth, and Leslie Ann Uloth, Appellees.**

**Nos. 10–01–074–CR to 10–01–076–CR.**

Court of Appeals of Texas, Waco.

March 20, 2002.

B.J. Shepherd, Hamilton County District Attorney, Martin L. Peterson, Hamilton County Asst. District Attorney, Meridian, for Appellant.

Joy L. Alexander, Hamilton, for Appellee Michael Crisp.

Robert J. Glasgow, Stephenville, for Appellees Ray Brian Uloth and Leslie Ann Uloth.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

VANCE, Justice.

This is a search and seizure case. Michael Dwain Crisp, Ray Brian Uloth, and Leslie Ann Uloth were charged with possession of methamphetamine with intent to deliver. They filed motions to suppress the evidence. After a pretrial hearing, the trial court granted the motions. The State brings this appeal contending that the court erred by suppressing the evidence. TEX.CODE CRIM. PROC. ANN. art. 44.01(5) (Vernon Supp.2002). We will affirm.

## FACTUAL BACKGROUND

The trial court made written findings of fact to establish the facts to which the law may be applied. Just as we do in reviewing the denial of a motion to suppress, we give "almost total deference" to the trial court's express determination of historical facts. *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App.2000). We are not free to disturb any finding made by the court if the finding is supported by the record. *Henson v. State,* 915 S.W.2d 186, 194 (Tex.App.—Corpus Christi 1996, no pet.) (citing *Green v. State,* 615 S.W.2d 700, 707 (Tex.Crim.App.1980)).

The State does not challenge the court's findings. The court made the following findings of fact, which we recount in narrative form.

In October 2000, officers of the Rural Area Narcotics Task Force conducted an investigation into a possible "drug lab" located on premises occupied by Jason Wuemling in Hamilton County. An affidavit for a search warrant was executed by Officer David Inocencio and presented to Susan Anglin, Justice of the Peace, Hamilton County, on October 24th. Judge Anglin issued a "search and arrest warrant" based on the affidavit at 12:26 p.m. The officers elected not to execute the warrant

until after dark because the area was remote, there was no cover, and the area was fenced, gated, and locked. They believed their approach would have been detected, and they were fearful the "drug lab" and other evidence would be destroyed before they could secure the site. From a command post, Officer Nolan Hicks had the Wuemling house and premises under surveillance and could observe the comings and goings from the site.

Later that afternoon, Hicks observed a "white, older model vehicle" as it approached the gate. Occupants of the house came out, unlocked the gate, and allowed the car to drive in. Hicks later observed the vehicle leave the premises. He could not observe what the occupants were doing while at the Wuemling property. At approximately 4:25 p.m., Hicks advised other officers by radio transmission that the white vehicle had left the site. After receiving the radio transmission, Officer Clint Hammonds, who was operating a marked law enforcement vehicle, stopped a white, older-model vehicle on U.S. 281, approximately 1 to 2 miles north of the Wuemling house. The driver of the vehicle had not committed any traffic violation. Hammonds was joined almost immediately by Inocencio, and they removed the occupants from the vehicle. The two male occupants, Ray Uloth and Michael Crisp, were immediately placed on the ground and handcuffed. The female occupant, Leslie Uloth, was allowed to stand and hold a minor-child occupant, who was hysterical.

The officers soon were joined by Officer Jessie Moreno and Hamilton County Deputy Jim Buster at the location of the stop. All occupants of the car were "Mirandized" and advised that they were being placed in "72–hour investigatory detention" until the warrant could be served on the Wuemling property. Prior to the three occupants being transported to jail, but after she had already been "Mirandized," Officer Moreno talked to Leslie. She said that they had been to the Wuemling house to get a bed. Moreno told her that they had the site under investigation as a "drug lab" and that he did not believe her. He asked if they got narcotics while at the site. Leslie then admitted they had and said the drugs could be found in a green container behind the back seat. No consent to search the vehicle was obtained. After the occupants were taken to jail for the "72–hour investigatory detention," the vehicle was moved to another location and a drug dog was used to conduct a "free air search" around the vehicle. The dog "hit" on the location of a green bottle containing methamphetamine.[1]

In addition to the trial court's findings of fact, additional facts may be adduced from the pretrial hearing on the motions to suppress:

- The green bottle contained 9 grams of methamphetamine.

- Ray and Leslie are married.

- Leslie testified that in the early afternoon of October 24, Crisp asked her and Ray if they could take him to the Wuemling property to pick up a bed; he did not have access to his vehicle.

- Ray's truck had a flat, and so did Leslie's vehicle.

- Leslie testified that she "had to get [her] mom's car," a white Ford Galaxy 500, for them to drive Crisp to the Wuemling property.

- When they left the Wuemling property in this car and were stopped by the Task Force officers, Crisp was a passenger in the front seat, Ray was the driver, and Leslie was a passenger in the

---

**1.** This marks the end of our narrative recitation of the trial court's findings of fact.

back seat along with a three-year old girl that she "baby-sat" that day.

## PROCEDURAL BACKGROUND

Crisp, Ray, and Leslie were separately indicted for possession of methamphetamine with intent to deliver an amount of four grams or more but less than 200 grams. TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.112(d) (Vernon Supp. 2002). Each defendant filed a motion to suppress the evidence. Michael moved to suppress the drugs that were found as a result of the search of the car in which he was a passenger. Michael argued that the search was "conducted without a warrant, probable cause, or other lawful authority in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10, and 19 of the Texas Constitution, and the provisions of the Texas Code of Criminal Procedure." Ray also moved to suppress the drugs found in the car. Ray argued that this evidence should be suppressed because the "actions of the Rural Area Narcotics Task Force violated [his] constitutional and statutory rights ... under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Section 9 of the Texas Constitution, and under Article 38.23 of the Texas Code of Criminal Procedure." Leslie's motion is identical to Ray's and alleges the same grounds.

After a joint hearing, the court granted the defendants' motions. The court ordered that "any physical evidence or oral statements obtained by the State of Texas on October 24, 2000, from the vehicle in which Defendant was an occupant, or oral statements obtained from any Defendant is hereby suppressed." The State appeals the court's ruling.

## ARGUMENTS BY THE PARTIES

■ In suppression cases in which the State is the appellant, the basic principle of appellate jurisprudence—that arguments not presented to the trial court are deemed waived—applies. *State v. Mercado*, 972 S.W.2d 75, 78 (Tex.Crim.App.1998); TEX.R.APP. P. 33.1. The sole exception is that the issue of standing can be raised by the State for the first time on appeal, regardless of whether the motion to suppress was granted or denied. *State v. Klima*, 934 S.W.2d 109, 111 (Tex.Crim. App.1996).

### The State's arguments

First, the State contends that none of the defendants established standing to complain about the search of the vehicle, which is owned by Leslie's mom. Second, the State argues that the initial stop and interrogation of the defendants was a temporary detention, a *"Terry* stop," for the purpose of investigating possibly-criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex.Crim.App.2000). The State also contends that Leslie's admission that drugs were in the car was made during that investigation. The State concludes that Leslie's admission gave the officers probable cause to arrest her and the other two occupants for possession of methamphetamine. Thus, the State argues that the warrantless search of the car which resulted in the discovery of the methamphetamine was permissible as a search incident to the arrest of the occupants. Alternatively, the State argues there was probable cause to conduct a warrantless search based on the "automobile exception" to the Fourth Amendment. *United States v. Johns*, 469 U.S. 478, 484, 105 S.Ct. 881, 885, 83 L.Ed.2d 890 (1985); *State v. Guzman*, 959 S.W.2d 631, 634 (Tex.Crim.App. 1998).

### The defendants' arguments

The defendants argue: (1) under *Lewis v. State*, 664 S.W.2d 345 (Tex.Crim.App. 1984), they each have standing to complain about the search of the car if the search resulted from an infringement of their own Fourth Amendment rights; (2) the Task Force officers were not justified in stopping their car merely because it was seen entering and leaving the Wuemling property, *i.e.*, that the facts do not support any "reasonable suspicion" that they were possibly engaged in criminal activity so as to justify the stop of the car; (3) in the alternative, even if the officers had reasonable suspicion to conduct a *Terry* stop, the evidence shows that no such investigative detention occurred, but rather the evidence shows that the officers stopped them only to arrest them; (4) their arrests were illegal because there was no probable cause or statutory basis for the arrests and, therefore, any evidence or oral statements derived from the arrests must be suppressed; and (5) the officers were not given consent for a warrantless search of the vehicle and had no authority to search the vehicle after the defendants had already been illegally arrested and, thus, the evidence found in the vehicle must be suppressed.

### STANDARD OF REVIEW

■ In a suppression case, we apply a bifurcated standard of review, giving "almost total deference to a trial court's determination of historical facts" and reviewing *de novo* the court's application of the law of search and seizure to those facts. *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997). Accordingly, "determinations of reasonable suspicion and probable cause [are] reviewed *de novo* on appeal." *Id.* at 87 (citing *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996)).

When the State is the appellant, it bears the burden of proving the trial court abused its discretion in granting the motion to suppress. *Mercado*, 972 S.W.2d at 77.

### STANDING

■ We initially address the State's first argument regarding the issue of standing: that none of the defendants have established their own privacy interest in the car and, therefore, cannot complain about its being searched. A defendant bringing a motion to suppress bears the burden of establishing his privacy interest in the place or item searched so as to have standing to raise a Fourth Amendment claim. *Klima*, 934 S.W.2d at 111 (citing *Rakas v. Illinois*, 439 U.S. 128, 149–50, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978)).

### Crisp's standing

■ A passenger such as Crisp can challenge the search of the vehicle "in which he is riding *if* the search resulted from an infringement (such as an illegal detention) of the *passenger's* Fourth Amendment rights." *Lewis v. State*, 664 S.W.2d 345, 348 (Tex.Crim.App.1984) (emphasis in original); *Carroll v. State*, 56 S.W.3d 644, 650 (Tex.App.—Waco 2001, no pet. h.). Here, Crisp challenges the legality of the initial stop, and he also contends that he was illegally arrested. Therefore, if his Fourth Amendment rights were violated because he was illegally detained or illegally arrested, he would have standing to contest the search of the car.

### Ray's and Leslie's standing

■ A defendant has standing to challenge the search of a car he does not own if he shows he gained possession of the borrowed car from the owner or one authorized to give permission to drive it. *Rovnak v. State*, 990 S.W.2d 863, 867 (Tex.

App.—Texarkana 1999, pet. ref'd). Leslie testified that she had to "get [her] mom's car" so she and Ray could take Crisp to the Wuemling property. We find that this testimony supports a finding that she gained possession of the borrowed car from the owner. *Id.* There is nothing in the record to suggest that she stole the car from her mother. Furthermore, Leslie, having borrowed the car from her mother, had the authority to give permission to Ray, her husband, to drive it. *Id.* Accordingly, we conclude that both Ray and Leslie have standing to challenge the search of the car. *See, e.g., Nite v. State,* 882 S.W.2d 587, 590–91 (Tex.App.—Houston [1st Dist.] 1994, no pet.) (defendant had standing to challenge search of car registered to his wife in part because of community property laws); *Stine v. State,* 787 S.W.2d 82, 85 (Tex.App.—Waco 1990, pet. ref'd) (defendant who had authority to test drive vehicles left for repairs at car repair shop had standing to challenge search of car which he had used to commit murder). We also note that they, like Crisp, might assert standing under *Lewis* by contending that they were illegally arrested. Therefore, if their Fourth Amendment rights were violated because they were illegally detained or illegally arrested, each would have standing to contest the search of the car. *Lewis,* 664 S.W.2d at 348; *Carroll,* 56 S.W.3d at 650.

### THE STOP

The State argues that the officers had reasonable suspicion to stop the defendants and conduct a brief investigative detention. *Carmouche,* 10 S.W.3d at 328 (citing *Terry,* 392 U.S. at 21, 88 S.Ct. at 1880). The three defendants contend that whether or not the officers were justified in conducting a *Terry* stop is irrelevant because that is not what the officers did; rather, they argue that the officers immediately arrested them without having prob-

able cause to do so. We agree that the facts of this case demonstrate that the question of whether the officers had reasonable suspicion to conduct a *Terry* stop is not a relevant inquiry. However, in our analysis we will assume without deciding that the officers had reasonable suspicion to make a *Terry* stop as we determine: (1) whether the officers "immediately" arrested the defendants as the trial court so found; and (2) if so, whether the officers had the legal authority to do so.

### When were the defendants arrested?

■ There is no question that all three defendants were ultimately arrested and taken to jail. The question is: when did the arrests occur? When reasonable suspicion exists, the investigative detention contemplated by *Terry* "is one during which the police are allowed to briefly question a suspicious person respecting his identity, his reason for being in the area or location, and to make similar reasonable inquiries of a truly investigatory nature." *Amores v. State,* 816 S.W.2d 407, 412 (Tex. Crim.App.1991). Here, the trial court found the following facts:

. . .

7. After receiving the radio transmission, Officer Clint Hammonds who was operating a marked law enforcement vehicle stopped a white, older model vehicle on U.S. 281, approximately 1–2 miles north of the [Wuemling property]. The vehicle had not been involved in any traffic violation. Hammonds was joined almost immediately by Officer David Inocencio and they removed the occupants from the vehicle. The two male occupants, Ray Uloth and Michael Crisp, were *immediately* placed on the ground and handcuffed. The female occupant, Leslie Uloth was allowed to hold a minor child occupant who was hysterical.

8. They soon were joined by Officer Jessie Moreno and Hamilton County Deputy Jim Buster at the location of the stop. All occupants were "Mirandized" and advised they were being placed in 72 hour investigatory detention until the warrant could be served on the property under surveillance. The occupants were not free to leave and were soon transported to the Hamilton County jail.

9. Prior to their being transported to jail, Officer Moreno talked to Leslie Uloth *after she was given the Miranda warnings.* She said they had been to the [Wuemling property] to get a bed. Officer Moreno told her they had the [Wuemling property] under investigation as a "drug lab," that he did not believe her and [asked] did they get narcotics while at the [Wuemling property]. Mrs. Uloth then admitted they had and that it could be found in a green container behind the back seat.

(Emphasis added). The three defendants argue that the evidence supports the trial court's finding that the officers did not briefly detain them and conduct a limited investigation as defined in *Amores,* but instead the officers immediately arrested them without probable cause. The State contends that the circumstances called for safety precautions and what the officers did was an investigative detention, and therefore, did not amount to an arrest without probable cause.

■ The record supports a finding that when the officers stopped the vehicle they did not briefly question the three defendants respecting their identities, their reason for visiting the Wuemling property, or make similar reasonable inquiries of an investigative nature. *Amores,* 816 S.W.2d at 412. Instead, the officers immediately removed Crisp and Ray, placing both of them on the ground handcuffed. All three defendants were then "Mirandized" and told that they were not free to leave because they were being placed in "72 hour investigatory detention until the warrant could be served on the [Wuemling] property under surveillance."

■ In *Burkes v. State,* the Court of Criminal Appeals held that where no investigative questioning preceded the officer's conduct in requiring the defendant to lie down and handcuffing him, the detention rose to the level of an arrest. *Burkes v. State,* 830 S.W.2d 922, 925 (Tex.Crim. App.1991); *see* Justice Meyer's concurring opinion in *Rhodes v. State,* 945 S.W.2d 115, 119–20 (Tex.Crim.App.1997) (arguing that the presence or absence of an investigation contemporaneous to physical restraint should be a dispositive factor in the analysis). Moreover, the Court recently held that an "arrest" occurs "when a person's liberty of movement is . successfully restricted or restrained, whether this is achieved by an officer's physical force or the suspect's submission to the officer's authority." *Medford v. State,* 13 S.W.3d 769, 773 (Tex.Crim.App.2000); *Vicioso v. State,* 54 S.W.3d 104, 109–10 (Tex.App.— Waco 2001, pet. ref'd). An arrest is complete if "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Medford,* 13 S.W.3d at 773 (quoting *United States v. Corral–Franco,* 848 F.2d 536, 540 (5th Cir.1988)). The subjective intent of either the police officer or the defendant is irrelevant. *Id.*

Both Crisp and Ray were immediately handcuffed, "Mirandized," placed on the ground, and told that they were going to jail for 72 hours. Thus, their freedom was restricted by an officer's physical force and verbal directive. *Id.* at 773. Leslie's liberty was restrained by her submission to the officer's authority in that she was not

free to leave, was "Mirandized," and was told that she would also be going to jail for 72 hours. *Id.* From these facts we conclude that "no ... investigation was conducted and the detention can by no means be characterized as investigatory within the meaning of *Terry v. Ohio....*" *Amores,* 816 S.W.2d at 412; *see Burkes,* 830 S.W.2d at 925 (since the officer conducted no investigation by questioning, the detention could not be considered an investigatory stop).[2] We agree with the trial court that all three defendants were under arrest immediately after the vehicle was stopped, because any reasonable person in each of the defendants' positions "would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *Medford,* 13 S.W.3d at 773 (citing *Corral–Franco,* 848 F.2d at 540).

**Were the arrests legal?**

It is undisputed that the officers did not have warrants to arrest the defendants. Chapter Fourteen of the Code of Criminal Procedure governs when an officer may make a warrantless arrest. TEX.CODE CRIM. PROC. ANN. arts. 14.01–.06 (Vernon 1977 & Supp.2002). Under these facts, none of the articles in Chapter Fourteen apply, nor does the State so argue. Aside from Chapter Fourteen, the Fourth Amendment requires probable cause before an arrest without a warrant can be made. U.S. CONST. amend. IV; *State v. Ballard,* 987 S.W.2d 889, 892 (Tex.Crim. App.1999). "Probable cause for an arrest exists where, at that moment, facts and circumstances within the knowledge of the arresting officer, and of which he has reasonably trustworthy information, would warrant a reasonably prudent person in believing that a particular person has committed or is committing a crime." *Ballard,* 987 S.W.2d at 892. There is no basis in these facts on which the court could have found that probable cause existed prior to the arrests.

Nevertheless, the State argues that Leslie's statement that there were drugs in the vehicle was made during the investigative detention which then gave the officers probable cause to arrest her and the other two occupants for possession of methamphetamine. The trial court found, however, that Leslie's statement was made *after* she and the others had been arrested. Thus, Leslie's admission cannot be used retroactively as probable cause for her arrest and the arrests of the other two defendants. The record demonstrates that nothing occurred between the time of the stop and the arrests to support probable cause to arrest them. Finding no statutory or constitutional basis for the arrests, we agree with the trial court that

**2.** On this point, we find helpful the analysis by Professor W. LaFave, cited with approval by the United States Supreme Court in *Michigan v. Summers,* 452 U.S. 692, 701 n. 12, 101 S.Ct. 2587, 2593 n. 12, 69 L.Ed.2d 340 (1981):

It is clear that there are several investigative techniques which may be utilized effectively in the course of a *Terry*-type stop. The most common is interrogation, which may include both a request for identification and inquiry concerning the suspicious conduct of the person detained. Sometimes the officer will communicate with others, either police or private citizens, in an effort to verify the explanation tendered or to confirm the identification or determine whether a person of that identity is otherwise wanted.... There is no reason to conclude that any of the investigative methods of the type just listed are inherently objectionable....

3 W. LAFAVE, SEARCH AND SEIZURE § 9.2, at 36–37 (1978) (footnotes omitted). We emphasize that the trial court's findings of fact reflect that the officers' actions in this case did not comport with what Professor LaFave calls the "most common" investigative technique used in the course of conducting a *Terry* stop.

the defendants were illegally arrested. Our conclusion also negates the State's contention that the warrantless search of the car was permissible as a search incident to the lawful arrest of the defendants.

## Summary

■ Although we assume that the officers had reasonable suspicion to stop the defendants' vehicle for an investigative detention, we find that the officers failed to conduct such an investigation, but instead made an illegal arrest of each defendant. *Amores,* 816 S.W.2d at 411–12 (the initial stop of the defendant in his car was an arrest, despite the State's characterization of the stop as an "investigative detention"). In light of this conclusion we now revisit the standing issue. The State contested Crisp's standing to challenge the search of the car. Having found that Crisp was illegally arrested and thus his Fourth Amendment rights violated, we find that he has standing to challenge the search of the car.[3] *Lewis,* 664 S.W.2d at 348; *Carroll,* 56 S.W.3d at 650.

## ARTICLE 38.23 AND ATTENUATION OF THE TAINT

■ The record shows a sequence of events that began when Leslie and the other defendants were illegally arrested almost immediately after their car was stopped. Under article 38.23(a), because all three defendants were arrested in violation of their Fourth Amendment rights, the physical evidence found in the car is inadmissible in any criminal trial against them. TEX.CODE CRIM. PROC. ANN. art.

38.23(a) (Vernon Supp.2002).[4] However, "the attenuation [of the taint] doctrine is applicable to Art. 38.23's prohibition against evidence 'obtained' in violation of the law because evidence sufficiently attenuated from the violation of the law is not considered to be 'obtained' therefrom." *Johnson v. State,* 871 S.W.2d 744, 750 (Tex.Crim.App.1994). Accordingly, "the attenuation doctrine is not an exception to Art. 38.23, but rather is a method of determining whether evidence was 'obtained' in violation of the law...." *Id.* at 751. In the context of article 38.23, the Court of Criminal Appeals recently stated that physical evidence "should be excluded once a causal connection between the illegality and the evidence is established." *Roquemore v. State,* 60 S.W.3d 862, 870 (Tex. Crim.App.2001) (citing *State v. Daugherty,* 931 S.W.2d 268, 270 (Tex.Crim.App.1996) ("Once the illegality and its causal connection have been established, the evidence must be excluded.")).

■ There can be no question that each defendant had standing to challenge the seizure of his own person. The standing to contest an alleged illegal seizure of one's person is distinguishable from standing to contest an alleged illegal search of a vehicle. The *Lewis* analysis demonstrates that the illegal arrest of each defendant confers on that defendant the right to challenge the search of the vehicle. *Lewis,* 664 S.W.2d at 348. The illegal arrests of all three occupants are logically inseparable in time from each other—they were arrested collectively as a group. This event (their arrests) was the first event of

---

**3.** This reasoning would also apply to Ray and Leslie, had we not earlier found that each had standing.

**4.** Article 38.23(a) reads in part:
No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2002).

a sequence that led to the discovery of the drugs in the car. If they had not been arrested, *i.e.*, if the first event never happened, the officers would not have been privy to Leslie's admission and not have searched the car. Accordingly, we find that there is a "causal connection" between the illegal arrests and the recovery of the drugs. *Roquemore*, 60 S.W.3d at 870.

Thus, the physical evidence must be suppressed under article 38.23(a) as to all three defendants because we find that the search of the car, as well as the evidence obtained in that search, is a "fruit" of the earlier seizures, *i.e.*, the illegal arrest of each defendant. 40 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE; CRIMINAL PRACTICE AND PROCEDURE § 4.52, at 203 (2d ed. 2001); *see Hernandez v. State*, 13 S.W.3d 492, 506–07 (Tex.App.—Amarillo 2000), *rev'd on other grounds*, 60 S.W.3d 106 (Tex.Crim.App.2001) (court of appeals applied *Lewis* analysis finding passenger had standing to challenge search of car and excluded cocaine found in car "on the basis of the exclusionary rule of *Mapp* [*v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) ] and its progeny, and on the basis of Art. 38.23(a) . . . .").

**The "automobile exception" to the Fourth Amendment**

 The State also contends there was probable cause to conduct a warrantless search of the car based on the "automobile exception" to the Fourth Amendment. *Johns*, 469 U.S. at 484, 105 S.Ct. at 885; *Guzman*, 959 S.W.2d at 634. Accordingly, the State argues that Leslie's admission gave the officers probable cause to search the car under this exception. However, under *Bell v. State* (four-factor test), we believe that the taint of Leslie's illegal arrest was not attenuated from her confession. *Bell v. State*, 724 S.W.2d 780, 787–88 (Tex.Crim.App.1986). Therefore, her in-

culpatory statement was "obtained" as a result of her illegal arrest and must be suppressed. TEX.CODE CRIM. PROC. ANN. art. 38.23(a).

But this analysis only strengthens our earlier conclusion that there was a "causal connection" between the three defendants' illegal arrests and the subsequent discovery of the drugs in the car. *Roquemore*, 60 S.W.3d at 870. Moreover, our analysis demonstrates that the search of the car was achieved by exploitation of the primary illegality, *i.e.*, the illegal arrest of each defendant, because the officers could not have discovered the drugs "by [any] *means sufficiently distinguishable* to be purged of the primary taint." *Lewis*, 664 S.W.2d at 348 (quoting *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963)) (emphasis added). Thus, we reject the State's argument that Leslie's confession was a "means sufficiently distinguishable" from the primary illegality that enabled the officers to lawfully search the car. *Id.*

**Summary**

 The purpose of the Fourth Amendment, as well as of the corresponding Texas constitutional provision, is "protection of innocent and guilty alike from arrest or search based upon suspicion or upon common rumor and report" rather than upon the much higher standard of probable cause. *Wilson v. State*, 621 S.W.2d 799, 803 (Tex.Crim.App.1981). Accordingly, "[a]rrest on mere suspicion collides violently with the basic human right of liberty." *Id.* (quoting HOGAN AND SNEE, THE McNABB–MALLOY RULE: ITS RUSE, RATIONALE AND RESCUE, 47 GEO. L.J. 22). With these principles in mind, we find that the trial court correctly concluded that the three defendants were illegally arrested as soon as they were ordered from the vehicle and that the search of the car and the evidence discovered therein are "fruits" of

that infringement on their respective "basic human right of liberty." *Id.*

## CONCLUSION

Having rejected all of the State's arguments, we affirm the trial court's order granting the defendant's motion to suppress in each case.