

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00129-CR

JONATHAN RUSSELL SHOOK,

                                                      **Appellant**

 v.

THE STATE OF TEXAS,

                                                      **Appellee**

---

**From the 82nd District Court**
**Falls County, Texas**
**Trial Court No. 10710**

---

## MEMORANDUM OPINION

---

Appellant, Jonathan Russell Shook, was charged by indictment with unlawful possession of a controlled substance—methamphetamine—in an amount more than one gram, but less than four grams.  *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c).  The State later filed a notice of punishment enhancement referencing Shook's prior convictions for unlawful possession of a controlled substance and aggravated assault causing serious bodily injury, which elevated the punishment range of the charged

offense to incarceration for twenty-five years to ninety-nine years or life. *See id.* § 12.42(d). After a trial, the jury found Shook guilty of the charged offense and found the habitual paragraphs to be "true." The jury assessed punishment at life imprisonment with a $10,000 fine. The trial court certified Shook's right to appeal, and this appeal followed.

In two issues, Shook contends that: (1) his trial counsel was ineffective by failing to file a motion to suppress challenging his arrest; and (2) the judgment should be reformed to delete the $10,000 fine because he was found to be a habitual offender, and Texas law does not provide for a fine in this situation. We affirm as modified.

## Ineffective Assistance of Counsel

In his first issue, Shook argues that his trial counsel was ineffective by failing to file a motion to suppress challenging his arrest. Shook asserts that the fruits of his arrest should have been suppressed because the arresting officer made the arrest outside his jurisdiction and did not personally observe the commission of a felony offense.

To prevail on an ineffective-assistance-of-counsel claim, the familiar *Strickland v. Washington* test must be met. *Wiggins v. State*, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535, 156 L. Ed. 471 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d (1984)); *Andrews v. State*, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005). Under *Strickland*, appellant must prove by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the defense was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064; *see Andrews*, 159 S.W.3d at 101.

Absent both showings, an appellant court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

To establish deficiency under the first prong of *Strickland*, appellant must prove by a preponderance of the evidence that his counsel's representation objectively fell below the standard of professional norms. *Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009). To show prejudice, appellant must show there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2052). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome, meaning counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Id.*

Our review of counsel's representation is highly deferential, and we will find ineffective assistance only if appellant overcomes the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. The right to "reasonably effective assistance of counsel" does not guarantee errorless counsel whose competency is judged by perfect hindsight. *Saylor v. State*, 660 S.W.2d 822, 824 (Tex. Crim. App. 1983). "Isolated instances in the record reflecting errors of commission or omission do not cause counsel to become ineffective, nor can ineffective assistance of counsel be established by isolating or

separating out one portion of the trial counsel's performance for examination." *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990).

Trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). When the record is silent, as in this case, regarding the reasons for counsel's conduct, a finding that counsel was ineffective requires impermissible speculation by the appellate court. *Gamble v. State*, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Thus, absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate or decide an ineffective-assistance-of-counsel claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). "[A]n application for a writ of habeas corpus is the more appropriate vehicle to raise ineffective assistance of counsel claims." *Rylander*, 101 S.W.3d at 110. To warrant reversal without affording counsel an opportunity to explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

The failure to file a motion to suppress evidence is not per se ineffective assistance of counsel. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 2587, 91 L. Ed. 2d 305 (1986); *see Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.). "Counsel is not required to engage in the filing of futile motions." *Hollis v. State*,

219 S.W.3d 446, 456 (Tex. App.—Austin 2007, no pet.) (citing *Mooney v. State*, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991)). Rather, to prevail on an ineffective-assistance-of-counsel claim premised on counsel's failure to file a motion to suppress, a defendant "must show by a preponderance of the evidence that the result of the proceeding would have been different—i.e., that the motion to suppress would have been granted and that the remaining evidence would have been insufficient to support his conviction." *Id.* (citing *Jackson v. State*, 973 S.W.2d 954, 956-57 (Tex. Crim. App. 1998)); *see Carroll v. State*, 56 S.W.3d 644, 649 (Tex. App.—Waco 2001, pet. ref'd) (noting that, to meet the deficiency prong of *Strickland* for failure to file a motion to suppress, the defendant must demonstrate that the motion likely would have been granted).

When a defendant seeks to suppress evidence on the basis of an illegal search or seizure, the burden of proof is placed initially upon the defendant. *Carroll*, 56 S.W.3d at 649 (citing *Russell v. State*, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986); *Mattei v. State*, 455 S.W.2d 761, 765-66 (Tex. Crim. App. 1970)). As the movant in a motion to suppress evidence, a defendant must produce evidence that defeats the presumption of proper police conduct and therefore shifts the burden of proof to the State. *Id.* at 649-50 (citing *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998); *Russell*, 717 S.W.2d at 9). A defendant meets his initial burden of proof by establishing that the search or seizure occurred without a warrant. *Id.* at 650 (citing *Russell*, 717 S.W.2d at 9). Once a defendant establishes that a search or seizure occurred and that no warrant was obtained, the

burden of proof shifts to the State. *Id.* (citing *Russell*, 717 S.W.2d at 9). If the State in unable to produce evidence of a warrant, then it must prove the reasonableness of the search or seizure. *Id.* (citing *Russell*, 717 S.W.2d at 10).

The Fourth Amendment does not forbid all seizures, just unreasonable seizures. *See Rhodes v. State*, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997). A police officer is generally justified in briefly detaining an individual on less than probable cause for the purposes of investigating possible criminal behavior where the officer can point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). The officer must show reasonable suspicion that the individual is connected to criminal activity. *State v. Larue*, 28 S.W.3d 549, 553 n.8 (Tex. Crim. App. 2000). Reasonable suspicion is not only based on the officer's personal observations but can also be supplied by other persons. *Adams v. Williams*, 407 U.S. 143, 147, 92 S. Ct. 1921, 1924, 32 L. Ed. 2d 612 (1972); *Brother v. State*, 166 S.W.3d 255, 257 (Tex. Crim. App. 2005).

An otherwise valid stop is not rendered unreasonable merely because the suspect's car is boxed in by police, or because weapons are drawn, or because the suspect is handcuffed. *Rhodes*, 945 S.W.2d at 117. The reasonableness of a stop must be examined in terms of the totality of the circumstances. *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997). Officers may use such force as is necessary to affect the goal of the stop:

investigation, maintenance of the status quo, or officer safety. *Rhodes*, 945 S.W.2d at 117. Allowances must be made for the fact that officers must often make quick decisions under tense, uncertain, and rapidly changing circumstances. *Id.*

Ryan Bobo, formerly a Deputy with the Falls County Sheriff's Office, testified that he was dispatched to a possible kidnapping involving a victim in a white Jeep and that the vehicle was traveling on Highway 7. Deputy Bobo knew that Officer Jared Bonner of the Rosebud Police Department and Mike Hamilton, the Chief of Police for the City of Lott, were on duty that day. Deputy Bobo contacted both the Lott and Bruceville-Eddy Police Departments to be on the lookout for the white Jeep. He later received word that a Bruceville-Eddy police officer had stopped the white Jeep on Highway 7. Deputy Bobo traveled to that location to speak with the victim, Cathy Seymore.

Seymore was nervous and trembling. Her voice was unsteady, and she was on the verge of tears. Seymore recounted that Shook had been in her vehicle and that he had gotten out near the Brazos River in Marlin, Texas. She described what Shook was wearing, and Deputy Bobo instructed dispatch to contact the Lott Police Department with the description of Shook and his location. While talking with Seymore, Deputy Bobo learned that Seymore and Shook had been in a relationship, but that she had broken it off due to his methamphetamine use.

A few days after their relationship had ended, Shook called Seymore and asked for a ride to Marlin. Seymore picked up Shook in Lacy Lakeview, Texas, and they drove

to Marlin. Seymore observed Shook carry a clear container in her vehicle. Seymore's daughter called, and after talking, Seymore "left the phone on." During the drive, Shook got angry and "blew up." Seymore was fearful of Shook. Seymore told Shook that she wanted out of the vehicle, but he refused. Seymore was able to exit the vehicle when Shook stopped at a bridge by the Brazos River. Thereafter, Shook got out of the vehicle and removed his personal belongings. Realizing that Shook had left the keys in the ignition of the vehicle, Seymore jumped into the driver's seat of the Jeep and drove away, leaving Shook on the side of the road. Shook yelled at her and tried to reach into the window, but she was able to escape.

Officer Bonner recounted that, while he was patrolling the City of Rosebud, he learned from the Falls County Sheriff's Office about a possible kidnapping and that the suspect was fleeing in a vehicle. Officer Bonner and Chief Hamilton got involved and began searching for the suspect. The officers received information that the suspect was driving towards Marlin, and that the suspect was wearing a blue hat, blue shirt, and blue jeans. When he approached the "Y" intersection between Highway 7 and Highway 320, Officer Bonner traveled down a county road that was "grass and dirt and gravel." While traveling down the county road, Officer Bonner saw an individual who matched the description of the kidnapping suspect "sitting down, facing away from me towards Highway 7, looking away." The individual, who was later identified as Shook, was sitting in the vicinity of the City of Marlin water pump.

When Officer Bonner exited his vehicle, Shook turned around, looked at Officer Bonner, and stood up. Not sure if Shook had a weapon, Officer Bonner removed his firearm from its holster and ordered Shook to approach. While approaching, Shook stumbled over some limbs. Officer Bonner believed that Shook "fake-stumble[d]" to "hide something real quick." Officer Bonner wrestled Shook to the ground and handcuffed him. In the middle of handcuffing Shook, Chief Hamilton arrived to assist. The officers proceeded to search Shook's person for weapons. Shook had a mini flashlight, a torch lighter, and a package of cigarettes in his pocket.

Officer Bonner then searched the area where Shook was sitting for weapons and contraband. Near where Shook stumbled was "a clear container just underneath some, like, a branch." According to Officer Bonner, "[i]t was as clean as you can get it. There was no debris on it. There wasn't any dust, dirt, anything like that." Inside the container was a clear glass pipe that had some "white residue inside." Based on his training and experience, Officer Bonner recognized the glass pipe had been used to smoke methamphetamine. Also inside the clear container was a medium-sized bag that contained what Officer Bonner identified as crystal methamphetamine. Brian Kivlighn, a forensic scientist with the Texas Department of Public Safety Crime Laboratory, later testified that the medium-size bag contained 3.06 grams of methamphetamine.

On appeal, Shook asserts that the methamphetamine evidence would have been suppressed had a motion been filed because Officer Bonner was outside his jurisdiction

and did not personally observe the commission of a felony offense. Generally, "a peace officer is a peace officer only while in his jurisdiction and when the officer leaves that jurisdiction, he cannot perform the functions of his office." *Martinez v. State*, 261 S.W.3d 773, 775 (Tex. App.—Amarillo 2008, pet. ref'd). Notwithstanding, there are statutory exceptions to the general rule. Specifically, article 14.01 of the Code of Criminal Procedure provides that "[a] peace officer may arrest an offender without a warrant for any offense committed in his presence or within his view, if the offense is one classed as a felony . . . ." TEX. CODE CRIM. PROC. ANN. art. 14.01(b). Moreover, article 14.03(d) of the Code of Criminal Procedure states that: "(d) A peace officer who is outside his jurisdiction may arrest, without warrant, a person who commits an offense within the officer's presence or view, if the offense is a felony, a violation of Chapter 42 or 49, Penal Code, or a breach of the peace." *Id.* art. 14.03(d).

Kidnapping is a felony of the third degree. *See* TEX. PENAL CODE ANN. § 20.03(c). An "arrest" under article 14.03 is not limited to a formal custodial arrest. *State v. Purdy*, 244 S.W.3d 591, 594 (Tex. App.—Dallas 2008, pet. struck). The provisions of article 14.03 apply when an officer, outside his jurisdiction, makes an investigative detention or *Terry* stop based on reasonable suspicion. *See Brother*, 166 S.W.3d at 259-60. Thus, an officer outside his jurisdiction may detain a person, where the officer has reasonable suspicion a felony violation is taking place in his presence or view. *See id.* at 257-60 (holding a municipal officer has the authority to stop a driver outside of the city limits if the officer

has reasonable suspicion the driver is driving while intoxicated); *Mitchell v. State*, 187 S.W.3d 113, 116 (Tex. App.—Waco 2006, pet. ref'd) (holding the officer was authorized to stop the defendant outside city limits under 14.03 because the officer had reasonable suspicion the defendant was intoxicated based on the unidentified citizen's report and the officer's own observations).

In his appellant's brief, Shook contends that Officer Bonner was outside his jurisdiction when he arrested Shook; however, he later conceded that the arrest occurred in Falls County; and that "Officer Bonner was within the allowed statutory jurisdiction." Notwithstanding the foregoing, assuming, without deciding, that Officer Bonner was outside his jurisdiction, we cannot say that the arrest was invalid.

As mentioned earlier, Officer Bonner, who was a peace officer as defined by article 2.12(3) of the Code of Criminal Procedure, was in constant contact with the Falls County Sheriff's Office and, thus, was acting in concert with Deputy Bobo and the Falls County Sheriff's Office in investigating and locating Shook, the suspect in the felony kidnapping. *See* TEX. CODE CRIM. PROC. ANN. art. 2.12(3); TEX. PENAL CODE ANN. § 20.03; *Brother*, 166 S.W.3d at 257 (noting that reasonable suspicion need not arise from the officer's personal observation but may be supplied by information acquired from another person); *see also Astran v. State*, 799 S.W.2d 761, 762-63 (Tex. Crim. App. 1990) ("As long as the facts show that the viewing officer effectively participated in the arrest and was fully aware of the circumstances of the arrest, then Art. 14.01 is satisfied."); *Willis v. State*, 669 S.W.2d 728,

730 (Tex. Crim. App. 1984) (holding that the officer in whose presence an offense was committed need not personally seize the appellant to make an arrest under article 14.01, when that officer was part of a surveillance team and participated in the arrest by relaying his knowledge to fellow officer and by observing the arrest from less than a mile away); *Coleman v. State*, 359 S.W.3d 749, 752-53 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (concluding that article 14.01 is satisfied when a peace officer observed an offense and participated in the arrest, despite the fact that the observing officers did not physically seize the suspect to make the arrest).

And even if Shook's arrest was illegal, the methamphetamine evidence was legally seized and not "fruit of the poisonous tree" directly stemming from Shook's arrest. Indeed, Officer Bonner observed Shook in a secluded area near the Brazos River in Falls County. Officer Bonner drove slowly down a dirt and gravel road without his siren or lights on and observed Shook sitting in a grassy area partially obscured by a tree. When Shook saw Officer Bonner, Shook stood. Officer Bonner then requested that Shook approach. While approaching, Officer Bonner observed Shook fake stumble in an effort to hide the clear container prior to being handcuffed, which could also constitute the commission of at least two different felony offenses—unlawful possession of a controlled substance in an amount greater than one gram, but less than four grams and possibly tampering with physical evidence—in Officer Bonner's presence. *See* TEX. CODE CRIM. PROC. ANN. arts. 14.01(a) ("A peace officer or any other person [] may, without a warrant,

arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony . . . ."), 14.03(d); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c); TEX. PENAL CODE ANN. § 37.09(a), (c) (providing that a person commits an offense if, knowing that an investigation is pending or in progress, alters, destroys, or conceals evidence with intent to impair its availability as evidence in the investigation and that this offense is a third-degree felony).  This evidence was not found on Shook's person, and Shook made no incriminating admissions regarding the container that were offered at trial by the State.  Rather, the contraband was found in a location where Shook was sitting and where he had no legitimate privacy interest.

Therefore, based on the foregoing, Shook has not demonstrated that, if filed, a motion to suppress would have been granted.  *See Jackson*, 973 S.W.2d at 956-57; *Hollis*, 219 S.W.3d at 456; *Carroll*, 56 S.W.3d at 649.  Accordingly, we cannot say that Shook's trial counsel was ineffective for failing to file a motion to suppress.  *See Jackson*, 973 S.W.2d at 956-57; *Hollis*, 219 S.W.3d at 456; *Carroll*, 56 S.W.3d at 649.  Accordingly, we overrule Shook's first issue.

## The $10,000 Fine

In his second issue, Shook contends that the judgment should be reformed to delete the $10,000 fine because he was determined to be a habitual offender, and because section 12.42(d) of the Penal Code does not authorize a fine in addition to imprisonment. *See* TEX. PENAL CODE ANN. § 12.42(d).  We agree.

"A sentence that is outside the maximum or minimum range of punishment is not authorized by law and therefore illegal." *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003). "[A] defendant cannot agree to an illegal sentence." *Jackson v. State*, 990 S.W.2d 879, 881 (Tex. App.—Beaumont 1999, no pet.), *overruled on other grounds by Sawyer v. State*, 294 S.W.3d 862 (Tex. App.—Beaumont 2009, pet. ref'd). Section 12.42 of the Texas Penal Code provides penalties for repeat and habitual felony offenders on trial for a first, second, or third-degree felony. TEX. PENAL CODE ANN. § 12.42. Subject to exception not applicable in this case, section 12.42(d) provides that:

> [I]f it is shown on the trial of a felony offense other than a state jail felony . . . the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished by imprisonment . . . for life, or for any term of not more than 99 years or less than 25 years.

*Id.* § 12.42(d). Section 12.42(d) does not authorize a fine in addition to imprisonment. *Id.*; *see Dolph v. State*, 440 S.W.3d 898, 908 (Tex. App.—Texarkana 2013, pet. ref'd); *see also Harris v. State*, 903 S.W.2d 514, 515 (Tex. App.—Texarkana 1995, no pet.) ("[T]here is no statutory provision for a fine as a habitual offender."); *Goodwin v. State*, 694 S.W.2d 19, 29 (Tex. App.—Corpus Christi 1985, pet. ref'd) (holding that the trial court erred by assessing a fine under section 12.42(d)).

Here, Shook was convicted of unlawful possession of a controlled substance in an amount greater than one gram, but less than four grams, which is a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c). The jury found the habitual

allegations to be true, thereby invoking the punishment range set forth in section 12.42(d) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 12.42(d). The judgment entered by the trial court reflects that a $10,000 fine was assessed by the jury. The jury was instructed that the range of punishment with findings of true to the habitual allegations was a term of incarceration of twenty-five years to life and a fine in any amount not to exceed $10,000. However, section 12.42(d) does not allow for the imposition of the $10,000 fine. *See id.*; *see also Dolph*, 440 S.W.3d at 908; *Harris*, 903 S.W.2d at 515; *Goodwin*, 694 S.W.2d at 29. Because it was not authorized by section 12.42(d), the imposed $10,000 fine is illegal. *See* TEX. PENAL CODE ANN. § 12.42(d); *see also Dolph*, 440 S.W.3d at 908; *Harris*, 903 S.W.2d at 515; *Goodwin*, 694 S.W.2d at 29.

When a trial court assesses an unauthorized or illegal fine, we may modify the judgment "by striking the requirement . . . appellant pay a fine as part of his punishment." *Harris v. State*, 670 S.W.2d 284, 285 (Tex. App.—Houston [1st Dist.] 1983, no writ); *see also* TEX. R. APP. P. 43.2(b); *Mizell*, 119 S.W.3d at 806 ("A trial or appellate court which otherwise has jurisdiction over a criminal conviction may always notice and correct an illegal sentence."). Thus, we modify the trial court's judgment by striking the requirement that Shook pay a fine as part of his punishment in this case. We sustain Shook's second issue.

**Conclusion**

Based on the foregoing, we modify the trial court's judgment to delete the $10,000 fine imposed.  As modified, we affirm the trial court's judgment.


STEVE SMITH
Justice


Before Chief Justice Gray,
      Justice Johnson, and
      Justice Smith
(Chief Justice Gray concurs in the Court's judgment.  A separate opinion will not issue.)
Affirmed as modified
Opinion delivered and filed May 25, 2022
Do not publish
[CRPM]

