NO. 07-01-0401-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 17, 2002

_____

GABRIEL G. TORRES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 99-430813; HONORABLE CECIL PURYEAR, JUDGE

_____

Before QUINN and REAVIS, JJ. and BOYD, S.J.[*]

After the trial court denied appellant's motion to suppress evidence and motion on voluntariness of statement or admission, appellant pled guilty to the offense of felon in possession of a firearm and pursuant to a plea bargain, punishment was assessed at six

_____

[*]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

years confinement. Presenting two issues, appellant contends the trial court erred in 1) overruling his motion to suppress evidence found as the result of an illegal search and 2) overruling his motion to suppress statement made as the result of custodial interrogation when appellant was not Mirandized. Based upon the rationale expressed herein, we affirm.

Upon hearing appellant's pretrial motions to suppress evidence and appellant's statements, the testimony of DPS Trooper Wesley established that appellant was stopped for a speeding violation at 10:00 p.m. on October 27, 1997, while he was driving a pickup truck and towing a homemade trailer loaded with a variety of items, *i.e.* furniture, large cooler, and air conditioner. Upon approaching the truck, Trooper Wesley recognized appellant from prior traffic stops. While he remained in his vehicle, appellant showed his driver's license and as he was reaching to locate his insurance papers, he turned his back to Trooper Wesley, blocking the trooper's view of his hands. However, while appellant was in that position, Trooper Wesley saw a purple bag which appeared to contain a hard object partially protruding out of appellant's coat pocket. Trooper Wesley testified that because it appeared like the "handle of a gun" in a purple bag, he asked what it was and removed the bag from appellant's coat pocket. Upon examining the contents of the bag, instead of finding a handgun, the trooper found a roll of money wrapped in a rubber band. According to Trooper Wesley, appellant became extremely nervous when he examined the bag.

In response to Trooper Wesley's question about the cash in the bag, appellant told the trooper that it was the proceeds of his sale of a car to a man in Abilene, but he could not remember the man's last name. Also, during the conversation, appellant told Trooper Wesley that he had been to Abilene, but on another instance, appellant stated that he had been to his father's house in Lubbock. Appellant was "fidgety and nervous" when Trooper Wesley inquired as to what was in the cooler next to him in the cab. When appellant did not respond but "just froze and stared at me," feeling that he needed to check for possible weapons, Trooper Wesley asked appellant to get out of the pickup. Finding no weapons from a pat down, Trooper Wesley commenced a search of the passenger's side of the pickup and found two handguns in the cooler. While appellant was in the patrol car, Trooper Wesley learned he was a convicted felon and arrested him for being in possession of a firearm.

By his first issue, appellant contends the trial court erred in overruling his motion to suppress evidence[1] found as the result of an illegal search. By his motion, he contended that one automatic pistol and one .44 Magnum revolver were illegally seized. We disagree.

---

[1]Although it appears that a written motion to suppress was submitted, neither the clerk's record nor the reporter's record contain a copy of appellant's motion to suppress. However, because the reporter's record does contain the testimony and argument by counsel, and the record contains a signed order denying the motion, we will consider the motion properly presented as to the two weapons.

Citing Guzman v. State, 955 S.W.2d 85, 89 (Tex.Cr.App. 1997) (en banc), appellant suggests that because Trooper Wesley was the only witness at the hearing and no questions of credibility, demeanor, or evaluation of his testimony are presented, that we review the mixed questions of law and fact *de novo.* However, because Trooper Wesley was cross-examined by appellant's counsel during the suppression hearing, the trial court was the sole judge of his credibility. Therefore, the trial court had the discretion to grant or deny the motion to suppress. State v. Ross, 32 S.W.3d 853, 855 (Tex.Cr.App. 2000) (en banc). Because the trial court did not file any findings of fact regarding the legality of the search and subsequent recovery of the weapons, we must review the evidence in the light most favorable to the trial court's ruling and assume the trial court made "implicit findings of fact that support its ruling as long as those findings are supported by the record," and we will sustain the decision of the trial court if it is correct on any theory of law. *Id.*

First, we note that appellant does not contend that the initial stop by Trooper Wesley was unlawful. In the course of a lawful detention, an officer may conduct a limited search for weapons where it is reasonably warranted for his safety. State v. West, 20 S.W.3d 867, 873 (Tex.App.–Dallas 2000, pet. ref'd). In determining whether an officer is justified in conducting a limited search for weapons, "[t]he issue is whether a reasonably prudent person would justifiably believe that his safety or that of others was in danger,"

O'Hara v. State, 27 S.W.3d 548, 551 (Tex.Cr.App. 2000), and a reasonable belief that the person may be armed and dangerous is sufficient. Worthey v. State, 805 S.W.2d 435, 439 (Tex.Cr.App. 1991) (en banc).

The testimony of Trooper Wesley is sufficient to support a trial court finding that he was reasonable in his conclusion appellant could be armed and dangerous. In addition to testifying that he thought he saw the handle of a pistol protruding from appellant's coat pocket, Trooper Wesley also testified: 1) he had previously stopped appellant but on this occasion, appellant demonstrated uncommon nervousness; 2) when asked for his insurance papers, appellant made furtive movements; 3) appellant had a large amount of cash on his person leading to suspicion drugs might be involved; 4) appellant gave inconsistent statements about his travels or route of his trip; 5) appellant avoided eye contact; and 6) appellant was unresponsive and in apparent fear when questioned about the cooler contents where the weapons were subsequently found. Viewing the evidence in the light most favorable to the trial court's ruling, we conclude the trial court did not abuse its discretion in denying appellant's motion to suppress. Appellant's first issue is overruled.

By his second issue, appellant contends the trial court erred in overruling his motion to suppress his statement made as the result of custodial interrogation when he was not Mirandized. Appellant contends that his statement in response to Trooper Wesley's

5

question that he purchased the weapons in Abilene should have been suppressed.  We disagree.

After appellant's conviction, the trial court made and filed 39 findings of fact and conclusions of law.[2]  As material here, the trial court found

> 17.  Trooper Wesley asked the Defendant what was in the cooler.
>
> 18.  The Defendant became even more nervous when Trooper Wesley asked him this question; the Defendant began to fidget even more in his seat and had a "wide-eyed" expression on his face.
>
> *  *  *
>
> 21.  Trooper Wesley found a Glock 9 mm semi-automatic pistol and a .44 caliber pistol in the cooler.
>
> 22.  Trooper began to investigate whether the Defendant was legally in possession of the two firearms.
>
> 23.  Trooper Wesley asked the Defendant to whom the pistols belonged.
>
> 24.  At this point in time, Trooper Wesley had not advised the Defendant of his *Miranda* warnings.
>
> 25.  The Defendant told Trooper Wesley that the firearms belonged to him, and that he had purchased the firearms in Abilene, Texas that day for $25.00.
>
> 26.  At this point in time, Trooper Wesley still did not know whether the Defendant legally possessed the firearms.
>
> 27.  Trooper Wesley asked the Defendant to step back to his patrol car while he ran the firearms.
>
> 28.  At this point, the Defendant had not been placed under arrest.
>
> 29.  Trooper Wesley learned that the firearms were not stolen, and also learned that the Defendant was a convicted felon.
>
> 30.  At this point in time, Trooper Wesley placed the Defendant under arrest for Felon in Possession of a Firearm.

---

[2]The findings of fact and conclusions of law entered by the trial court only applied to appellant's motion to suppress his oral statement.

6

31. During the time period from when Trooper Wesley started his investigation into the Defendant's possession of the firearms up to and including the moment Trooper Wesley placed the Defendant under arrest, the Defendant was not free to leave.

\* \* \*

33. The Defendant was not in custody when he admitted to Trooper Wesley that the firearms belonged to him.

34. Defendant was not threatened or coerced into giving the oral statement.

35. Defendant was not deprived of any basic necessities nor mistreated during the traffic stop and subsequent investigation into his possession of the firearms.

36. Defendant was not promised anything in exchange for his oral statement.

\* \* \*

39. Defendant's oral statement was knowingly, freely and voluntarily made, and was not the product of a custodial interrogation.

After the fact findings, the trial court made conclusions of law, which provided in part:

> However, under the totality of the circumstances, Defendant was not in custody at the time he made his oral statement. Instead, at the time of his statement Trooper Wesley was engaged in an investigative detention of Defendant in order to determine whether Defendant was legally in possession of the two firearms that Trooper Wesley had seized moments before, and as such, Trooper Wesley was not required to warn Defendant under Miranda.

Appellant does not expressly identify the statement which he contends should have been suppressed. However, from the context of the argument it appears appellant's complaint is focused on his statement to Trooper Wesley that he owned the firearms and had purchased them that day in Abilene.

7

As material here, the terms "ownership" and "possession" are not synonymous.[3] Appellant was charged and convicted of being a felon in possession of firearms. Although section 46.04 of the Texas Penal Code makes possession of a firearm by a felon unlawful, the statute does not make the ownership of a firearm a crime. The obvious intent of the statute proscribing possession of firearms by convicted felons is to keep violent offenders from going about with firearms. Sheppard v. State, 586 S.W.2d 500 (Tex.Cr.App.1979). Because they have demonstrated a propensity toward violence, the State has a rational basis on which to restrict their possession of firearms in order to protect the general public. Milligan v. State, 554 S.W.2d 192 (Tex.Cr.App.1977). Appellant did not plead guilty to unlawful ownership of the weapons but, instead, the unlawful possession of the guns. Appellant's possession of the firearms had already been implicated by the investigation before he acknowledged ownership of the weapons.

Moreover, in reviewing the denial of a motion to suppress, we give almost total deference to the trial court's express determination of historical facts and are not free to disturb any finding made by the trial court if it is supported by the record. State v. Crisp, 74 S.W.3d 474, 477 (Tex.App.–Waco 2002, no pet.). Because a traffic stop does not constitute custody for purposes of Miranda, State v. Stevenson, 958 S.W.2d 824, 828 (Tex.Cr.App. 1997) (en banc), the roadside stop did not escalate into a custodial situation until Trooper Wesley received information that appellant was a convicted felon, and the

---

[3]See TEX. PEN. CODE ANN. §1.07 (35) and (39) (Vernon Supp. 2002).

8

record supports the trial court finding that appellant was not in custody when he told Trooper Wesley the firearms belonged to him. Also, because the statement was knowingly, freely, and voluntarily made and not the product of a custodial interrogation, we conclude the trial court did not err in overruling his motion. Appellant's second issue is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Do not publish.