**Opinion issued November 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00444-CR

———————————

**BLAKE ALAN COTTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 248th District Court**
**Harris County, Texas**
**Trial Court Case No. 1421756**

---

## O P I N I O N

Blake Alan Cotton pleaded guilty to burglary of a building[1] and received a six-month jail sentence. In his single issue, Cotton contends that his counsel failed to file a motion to suppress his statements to the police, that failure constituted

---

[1]    TEX. PENAL CODE ANN. § 30.02(c)(1) (West 2011).

ineffective assistance of counsel, and that his plea was involuntary as a result. We affirm.

## Background

Late one night, around 1 a.m., police were dispatched to A. Mongiello's house after she called the police to report "a man walking in her backyard." When Officer C. Burnett arrived, he did not see anyone in her backyard or around the area. He did, however, see a pile of tools behind the house that was across a shared alleyway.

The officer saw a truck pull up in a driveway about three houses from Mongiello's. After Cotton got out of the truck, the officer "walk[ed] up to ask him if had seen anybody in the area" and if he lived at the house. Cotton answered "no" and began walking toward Mongiello's house. The officer called out for Cotton to "stop and come talk to me." After the officer repeated this command, Cotton stopped and turned around.

The officer asked Cotton where he was going, and Cotton told him "he was going to [Mongiello's] house." The officer left Cotton with a second police officer who had just arrived at the scene as backup and went to talk to Mongiello, who told him that she knew Cotton but did not know he was coming over. The officer then returned to Cotton and told him that Mongiello did not know "he [was]

2

coming over." Cotton replied that "his girlfriend told him to meet her at[] Mongiello's house."

The officer returned to Mongiello and asked her if Cotton's girlfriend was coming over, and she told him that "she had three kids inside. No one was expected to come over." The officer then talked to the owner of the house behind Mongiello's where the tools were piled. In response to the officer's questions, the owner said that the tools were his, that he had not put the tools there, and that no one had permission to take the tools.

Again, the officer returned to Cotton. "After he was read his *Miranda* warning," Cotton admitted "that he had taken the property out of the shed because he was looking for scrap to sell." The police then arrested Cotton, who was already on community supervision for burglary of a building. The officer estimated that about 15 to 20 minutes passed from the time he first saw Cotton get out of the truck to when he read Cotton his *Miranda* rights.

Cotton met his attorney shortly before his court hearing five days later, at which he pleaded guilty. Cotton and his attorney differ regarding what happened during that meeting. Cotton claims that he only accepted the plea bargain because he "didn't think [he] had any other . . . deal." He says he "definitely would have" filed a motion to suppress if his attorney had told him that he could "contest the legality of the detention and the admissibility of [his] oral statements and that if the

3

motion were granted, then the State might not be able to connect [him] to the property."

Cotton's attorney testified that Cotton wanted to plead guilty to trespass and quickly accepted the prosecutor's offer of a six-month sentence for a guilty plea of burglary of a building because he wanted to have the process "over with" so he could support his child. According to the attorney, she urged Cotton to "wait," but Cotton "was insistent" on accepting the plea bargain, which offered the lowest sentence for burglary of a building. TEX. PENAL CODE ANN. § 30.02(c)(1) (West 2011); *Id.* at § 12.35(a) (West Supp. 2014).

Cotton filed a motion for new trial alleging ineffective assistance of counsel, which the trial court denied. Cotton appeals.

## Ineffective Assistance of Counsel

Cotton argues that "[i]f defense counsel had filed a motion to suppress based on the illegal detention of Mr. Cotton, his statements would not have been admissible, which effectively gutted the state's case against him. Defense counsel did not even recognize the issue, nor did she inform Mr. Cotton that a Motion to Suppress could have been filed." The State responds that "the stop was supported by reasonable suspicion, and thus appellant would not have prevailed on the motion to suppress had one been filed."

4

## A.    Standard of review

We review a trial court's denial of a motion for new trial under an abuse-of-discretion standard. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004). When the motion alleges ineffective assistance of counsel, we must determine whether the trial court's finding on the ineffective assistance argument and subsequent denial of the motion for new trial were "so clearly wrong as to lie outside the zone of reasonable disagreement." *Keller v. State*, 125 S.W.3d 600, 606–07 (Tex. App.—Houston [1st Dist.] 2003), *pet. dism'd, improvidently granted*, 146 S.W.3d 677 (Tex. Crim. App. 2004).

To be entitled to a new trial based on a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, that (1) the attorney's performance was so deficient that the attorney was not functioning as acceptable counsel under the Sixth Amendment and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005); *Apolinar v. State*, 106 S.W.3d 407, 416 (Tex. App.—Houston [1st Dist.] 2003), *aff'd*, 155 S.W.3d 184 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687–96, 104 S. Ct. 2052, 2064–69 (1984) and *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999)).

"Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective." *Thompson*, 9 S.W.3d at 813. "When handed the task of determining the validity of a defendant's claim of ineffective assistance of counsel, any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight." *Id.* (citing *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)).

**B.    Failure to file a motion to suppress did not constitute ineffective assistance**

Cotton argues that "[d]efense counsel failed to recognize a critical legal issue and did not advise [him] that a motion to suppress should be filed on his behalf" and this failure constituted ineffective assistance of counsel. But an attorney's failure to file a motion to suppress evidence does not demonstrate a deficient performance by counsel per se. *Gutierrez v. State*, No. 02-08-00065-CR, 2009 WL 112779, at *2 (Tex. App.—Fort Worth Jan. 15, 2009, no pet.) (mem. op., not designated for publication); *see Castellano v. State*, 49 S.W.3d 566, 576–77 (Tex. App.—Corpus Christi 2001, pet. ref'd) (holding that failure to file motion to suppress did not constitute ineffective assistance of counsel); *Collins v. State*, No. 01-00-00309-CR, 2001 WL 722844, at *1 (Tex. App.—Houston [1st Dist.] June 28, 2001, pet. ref'd) (mem. op., not designated for publication) (same); *Ex parte Contreras*, No. 08-05-00397-CR, 2007 WL 1513997, at *2 (Tex. App.—El Paso May 24, 2007, no pet.) (mem. op., not designated for publication) (same). To meet

the deficiency prong of *Strickland* for failure to file a motion to suppress, the defendant must demonstrate that the motion likely would have been granted. *Carroll v. State*, 56 S.W.3d 644, 649 (Tex. App.—Waco 2001, pet. ref'd).

"An officer conducts a lawful temporary detention[2] when he has reasonable suspicion to believe that an individual is violating the law." *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005). An officer has reasonable suspicion if there are "specific, articulable facts that, when combined with rational inferences from those facts," lead the officer to reasonably conclude that the "person actually is, has been, or soon will be engaged in criminal activity." *Id.* This standard is an objective one "that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. A reasonable-suspicion determination is made by considering the totality of the circumstances." *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005). Under the reasonable suspicion standard, "a police officer may briefly stop a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information." *Hoag v. State*, 728 S.W.2d 375, 380 (Tex. Crim. App. 1987).

---

[2]     The State does not contest Cotton's assertion that the officer's actions in stopping and detaining him while talking to Mongiello constituted a detention. Thus, we will assume that this stop was a detention.

The officer here had reasonable suspicion to briefly stop Cotton and "maintain the status quo" for 15 to 20 minutes to obtain more information. Numerous cases have found reasonable suspicion of criminal activity under similar circumstances. For example, in *Davis v. State*, while responding to a burglary alarm late at night, a police officer saw a man riding a bicycle two blocks from the scene of a burglary. 783 S.W.2d 313, 315–16 (Tex. App.—Corpus Christi 1990, pet. ref'd, untimely filed). Because a crime had occurred and the man was so close to the scene of the crime so late at night, the police officer was justified in "maintain[ing] the status quo momentarily while obtaining more information." *Id.* at 317.

In *Tanner v. State*, a man and his "companion" were walking outside of a bar late at night over an hour after the bar had closed. 228 S.W.3d 852, 856 (Tex. App.—Austin 2007, no pet.). After seeing the police car, the man began walking away from the police. *Id.* The Austin court concluded that, when "common sense is applied to the totality of these circumstances," the police officer had "reasonable suspicion" to detain the man and ask him why he was there. *Id.* at 858.

In another case, a police officer saw two boys running down the street carrying a laundry basket late at night in an area "well-known for criminal activities." *In re A.B.*, No. 04-01-00546-CV, 2002 WL 31375188, at *2–3 (Tex. App.—San Antonio Oct. 23, 2002, no pet.) (mem. op., not designated for

8

publication). The officer stopped the boys and asked them how old they were and what was in the basket. *Id.* at *2. The boys "failed to cooperate." *Id.* These facts established "reasonable suspicion" and allowed a temporary detention of the boys. *Id.* at *3.

In *Austin v. State*, an officer stopped a man who matched the description of a murder suspect and wore a jacket similar to that of the murder victim. No. 01-93-00124-CR, 1994 WL 150906, at *2 (Tex. App.—Houston [1st Dist.] Apr. 28, 1994, pet ref'd) (mem. op., not designated for publication). This Court held that these similarities were sufficient to establish "reasonable suspicion" to stop and question the man. *Id.*

In *United States v. Royal*, just before dawn, a police officer saw two men wearing dark clothing leaving a business where recurring break-ins and thefts had occurred. 523 F. App'x 377, 385–86 (6th Cir. 2013). The police noticed building insulation on the men's clothing and began questioning the men, who appeared nervous and evasive in their answers to the police. *Id.* All of these facts established "reasonable suspicion" to justify a temporary detention. *Id.*

Here, the officer reasonably could have suspected two crimes had taken place or were occurring: trespass (from Mongiello's call stating that a man was walking in her backyard) and theft (from the pile of tools sitting near an alleyway). Like in *Davis*, Cotton was around the scene of the crimes. Similar to the

9

defendants in *Tanner* and *In re A.B.*, Cotton was in the area late at night and began walking away from the officer when asked if he lived there. The officer saw Cotton—who did not live at the house at which he parked—get out of his car and begin walking toward the scene of the crime.

Cotton cites two cases in contending that no reasonable suspicion supported his brief detention.[3] In *Crain v. State*, the police saw a man walking in a yard late at night in an area known for burglaries. 315 S.W.3d 43, 53 (Tex. Crim. App. 2010). Although "no burglaries [had been] reported for that residential area on the evening of the appellant's arrest" and the police officer did not know whether the man "was a resident of the house to which the yard belonged," the police stopped him and began to question him. *Id.* No reasonable suspicion existed. *Id.*

Similarly, in *Gramble v. State*, the officer saw the defendant walking and asked him what he was doing. 8 S.W.3d 452, 453 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Immediately after the man answered "walking," the officer began a "pat-down" on the man. *Id.* The man had committed "no wrongful act" in front of the police nor had the police received any complaints that a crime had been

---

3    Cotton also cites to American Bar Association Standards requiring defense counsel to discuss "likely" legal options such as motions with the defendant. AM. BAR ASS'N, III CRIMINAL JUSTICE STANDARDS FOR THE DEFENSE FUNCTION §4-3.3(c)(v) (4th ed. 2015). For reasons discussed in this case, a motion to suppress based on "reasonable suspicion" would have failed. Thus, it cannot be described as a "likely" option.

committed around that area that night. *Id.* There was not reasonable suspicion to support the detention.

This case is different. Unlike in *Crain* and *Gramble*, in which the police had no basis for reasonably suspecting a crime had occurred at all, the officer had a basis for linking Cotton to a crime because Cotton parked his truck late at night near a stranger's house where tools had been piled up and then walked toward a house where he did not live, had not been invited, and a suspected trespass had occurred. Based on the totality of the circumstances, a 15 to 20 minute stop to "maintain the status quo momentarily while obtaining more information" was reasonable. *Hoag*, 728 S.W.2d at 380. Because Cotton cannot show a "reasonable probability" that the "motion [to suppress] would have been granted," his lawyer's failure to file such a motion was not a deficient performance. *Carroll*, 56 S.W.3d at 649.

Because Cotton cannot meet the first prong of *Strickland*, we do not reach the second prong. Accordingly, we overrule his only issue.

## Conclusion

We affirm the judgment of the trial court.


Harvey Brown
Justice

11

Panel consists of Justices Jennings, Higley, and Brown.

Publish. TEX. R. APP. P. 47.2(b).