

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-20-00123-CR

———————————————————

TROY EDWARD KARR, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CR18-1028

---

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

On appeal from his conviction and seven-year sentence for methamphetamine possession, *see* Tex. Health & Safety Code Ann. § 481.115(c), Troy Edward Karr challenges the trial court's denial of his motion to suppress, claiming that the officer who stopped him did not have reasonable suspicion to do so under the United States Constitution, the Texas Constitution, or both. U.S. Const. amend. IV; Tex. Const. art. I, § 9. Because we disagree, we affirm the trial court's judgment.

## Brief Background

The State indicted Karr for possession of methamphetamine after a Parker County Sheriff's Office deputy found it during a traffic stop. Although Karr filed a motion to suppress the methamphetamine, claiming that the stop violated the Fourth Amendment of the United States Constitution and Article 1, Section 9 of the Texas Constitution, the trial court denied the motion. Karr and the State agreed to findings of fact and conclusions of law, which the trial court signed. Karr then pleaded nolo contendere to the possession offense, and the trial judge sentenced him to seven years' confinement, in accordance with the plea bargain. Karr appeals his conviction and sentence, challenging only the suppression ruling. *See* Tex. R. App. P. 25.2(a)(2)(A).

## Standard of Review and Applicable Law

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007);

*Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer almost totally to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on evaluating credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002).

When the trial court grants a motion to suppress and files accompanying findings of fact and conclusions of law, and the sole witness at the suppression hearing is the arresting officer, our only question is whether the trial court properly applied the law to the facts it found. *See State v. Gray*, 158 S.W.3d 465, 467, 469 (Tex. Crim. App. 2005); *Guzman*, 955 S.W.2d at 86–87, 89.

The methamphetamine was found after a traffic stop. Such a stop may be justified on less than probable cause if a person is reasonably suspected of criminal activity based on specific, articulable facts. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). An officer conducts a lawful temporary detention when he reasonably suspects that an individual is violating the law. *Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or

3

soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492. This is an objective standard that disregards the detaining officer's subjective intent and looks solely to whether the officer has an objective basis for the stop. *Id.*

An officer may not act solely on a hunch, but his determination of "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Tanner v. State*, 228 S.W.3d 852, 856 (Tex. App.—Austin 2007, no pet.) (citing *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 751 (2002)). The facts adduced to give rise to a reasonable suspicion need not show that a person has committed, is committing, or is about to commit a particular and distinctively identifiable penal offense. *Derichsweiler v. State*, 348 S.W.3d 906, 916–17 (Tex. Crim. App. 2011). Instead, the articulable facts need only show (1) the occurrence of "some activity out of the ordinary . . ., [(2)] some suggestion to connect the detainee to the unusual activity, and [(3)] some indication that the unusual activity is related to crime." *Johnson v. State*, 622 S.W.3d 378, 384 (Tex. Crim. App. 2021). Thus, when determining whether reasonable suspicion existed, the court does not inquire whether conduct is innocent or guilty but considers instead "the degree of suspicion that attaches to particular types of noncriminal acts." *United States v. Sokolow*, 490 U.S. 1, 10, 109 S. Ct. 1581, 1587 (1989).

4

## Suppression-Hearing Evidence

At the suppression hearing, Parker County Sheriff's Office Corporal Gerry Olson[1] testified that while driving at 2:30 a.m. on Highway 199 just outside Springtown, he saw a "dark-colored pickup truck" at the RDL tire shop, which had been closed for more than six hours. According to Olson, although there are no bars or restaurants in the tire shop's "general area," it is a "very industrial area" that has "a high crime rate where thefts and burglaries . . . occur": "there's several businesses, gas stations that are constantly broke into. There's also low-income housing areas where a lot of activity does occur, trailer parks and such, where crime is usually afoot." Olson considered the truck's presence unusual because he patrolled that area of Highway 199 regularly and normally did not see anybody in that parking lot at 2:30 a.m. He thought it was also suspicious because the business was not open at that time, and employees were not supposed to be there.

When Olson first saw the truck, it was among other vehicles in the parking lot,[2] but it was in motion, backing up "very close" to the other vehicles. Olson could see the truck's taillights, which were pointed toward the road; the headlights were "facing the other direction." Olson testified that the truck driver's activity that he observed

---

[1]At the time of the traffic stop, Olson was a deputy and had been a licensed Texas peace officer for eight years. He became a corporal in 2019, and the trial court referred to him by that title.

[2]According to Olson, the business would "normally . . . leave several cars parked out in front . . . that they work on that's left there overnight."

was consistent with that of someone who was looking for vehicles and valuables inside vehicles to steal.

According to Olson, the truck's driver did not appear to be in distress or to be a danger to himself or others, nor did he appear to be having any problems with the vehicle. Nobody had reported any potential burglaries or thefts in the area that night, but Olson did not know that until after the stop. While Olson admitted that when he stopped the truck, he had not observed any traffic violation and did not have probable cause for an arrest, he testified that he had a hunch that something was wrong:

> Q. You had no reason to suspect that theft or any other criminal activity was afoot aside from the fact that someone has their taillights on in a parking lot?
>
> A. After speaking with him, it was determined that -- not during the stop, no.
>
> Q. There's nothing you can point to besides the taillights and the time of night that you suspected criminal activity afoot?
>
> A. Being in the parking lot at that hour in that area, I believed that crime was afoot during that time.

The trial court also admitted Olson's arrest report into evidence. In it, he describes how he first noticed the truck and eventually made a traffic stop:

> On September 13, 2018[,] at approximately 0239 hours, I, Deputy G. Olson, was on routine patrol in the 1300 block of State Highway 199 East, Springtown, Parker County, Texas. I passed a local business identified as RDL Tires . . . . While passing the business, I observed a dark colored pickup backing up to several vehicles in the parking lot. I drive this area regularly and know employees at this business do not

6

normally work during those hours. As I turned around to check on the vehicle, I observed it to pull out of the parking lot and begin driving west in the 1300 block of State Highway 199 East. I caught up to the vehicle in the 1000 block of State Highway 199 East and activated my emergency lights for the intent of conducting an investigation for a suspicious vehicle.

When Olson stopped Karr, he found that Karr had several active arrest warrants. And after Karr gave Olson consent to search the truck, Olson found methamphetamine.

The trial court found that "[t]he primary purpose for Corporal Olson's stop of [Karr's] pickup truck was investigating criminal activity." It concluded, based on the facts presented at the suppression hearing, that "Corporal Olson had reasonable suspicion to make a warrantless stop of [Karr's] vehicle."

## Analysis

Karr contends that Olson stopped him based solely on a hunch that did not amount to reasonable suspicion. In support of his argument, Karr analogizes the facts here to the facts in cases in which the courts held that the officer did not have reasonable suspicion for a stop.[3] And he attempts to distinguish the facts of other cases in which the courts conversely held that the officers did have reasonable

---

[3]See Sibron v. New York, 392 U.S. 40, 44–50, 62–64, 88 S. Ct. 1889, 1893–96, 1902–03 (1968); Tunnell v. State, 554 S.W.2d 697, 698 (Tex. Crim. App. 1977); State v. Police, 377 S.W.3d 33, 37–40 (Tex. App.—Waco 2012, no pet.); Klare v. State, 76 S.W.3d 68, 72–77 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd); see also Gurrola v. State, 877 S.W.2d 300, 301–05 (Tex. Crim. App. 1994).

suspicion.[4] But, as the United States Supreme Court has observed, this approach is problematic in this context. Because "the mosaic . . . analyzed for a reasonable-suspicion or probable-cause inquiry is multi-faceted," the Court has instructed us that "one determination will seldom be a useful 'precedent' for another" unless the facts are so similar to those of a prior case that the same outcome is required to be faithful to the law. *Ornelas v. United States*, 517 U.S. 690, 698, 116 S. Ct. 1657, 1662 (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 n.11, 103 S. Ct. 2317, 2332 n.11 (1983)).

Even if we engaged in such an endeavor, adherence to the outcome in the cases Karr urges us to follow is not necessary because they are not analogous. In those cases, the appellants were not engaged in any suspicious behavior. *See Sibron*, 392 U.S. at 44–50, 88 S. Ct. at 1893–96 (officers watched appellant talking to known narcotics addicts in public places at several times over an eight-hour period); *Tunnell*, 554 S.W.2d at 697–98 (officer saw appellant and two other men parked in hospital parking lot at 2:16 a.m. less than a mile away from a factory with 24-hour operations); *Police*, 377 S.W.3d at 37 (officer familiar with neighborhood spotted appellant's unfamiliar car and then saw appellant turn into residential subdivision on horseshoe drive, turn

---

[4]*See Furr v. State*, 499 S.W.3d 872, 875–76, 879–81 (Tex. Crim. App. 2016); *Derichsweiler v. State*, 348 S.W.3d 906, 909 (Tex. Crim. App. 2011); *Amorella v. State*, 554 S.W.2d 700, 701 (Tex. Crim. App. 1977); *Hernandez v. State*, 523 S.W.2d 410, 411 (Tex. Crim. App. 1975); *Cotton v. State*, 480 S.W.3d 754, 755–59 (Tex. App.—Houston [1st Dist.] 2015, no pet.); *Tanner v. State*, 228 S.W.3d 852, 856–57 (Tex. App.—Austin 2007, no pet.); *Davis v. State*, 783 S.W.2d 313, 315–17 (Tex. App.—Corpus Christi– Edinburg 1990, pet. ref'd, untimely filed).

around on horseshoe drive, and exit residential subdivision); *Klare*, 76 S.W.3d at 71 (officer noticed appellant parked behind strip shopping center, facing 24-hour convenience store, at 2:30 a.m.).

Here, it was not Karr's "mere presence in the parking lot of a closed business at 2:30 a.m. in a 'high crime area'" alone that aroused Olson's suspicion. Instead, Olson's suspicion arose from those facts combined with Karr's driving in the parking lot in a manner consistent with trying to look for something of value in the vehicles that had been left in the parking lot overnight. *Cf. Johnson*, 622 S.W.3d at 388 ("Sergeant Cox was confronted with unusual circumstances that, from an objective standpoint, gave rise to reason to believe that something criminal had occurred, was occurring, or was about to occur."). In that regard, the facts here are more akin to the facts in *Tanner*, 228 S.W.3d at 856–67, one of the cases Karr argues is distinguishable, and at least one other case with similar facts.[5]

Karr has challenged each of the relevant facts piecemeal, arguing that the time of day alone, the location alone, and the fact that the general area was a high-crime area, alone, are not sufficient to support reasonable suspicion. Karr also disregards

---

[5] *See Marical v. State*, No. 05-16-00988-CR, 2017 WL 2871431, at *1, *3–4 (Tex. App.—Dallas June 29, 2017, pet. ref'd) (mem. op., not designated for publication) (around midnight, officer saw car pull out of normally restricted-access alley behind closed downtown businesses, in area where there had been a history of break-ins). Although *Marical* is even further removed from having any precedential value because it is unpublished, *see* Tex. R. App. P. 47.7(a), we cite it as an example of another case in which the driver's behavior at the particular location and time of day gave the officer reasonable suspicion under the totality of the circumstances.

Olson's testimony about the high-crime area because "nothing else in the record . . . support[s] this contention" and because it was not included as a fact in the arrest report. But, in evaluating whether reasonable suspicion existed, we may not consider the circumstances in a piecemeal, divide-and-conquer fashion, nor are we to focus on what the record and findings did not contain. *See Arvizu*, 534 U.S. at 274–75, 122 S. Ct. at 751; *Furr v. State*, 499 S.W.3d 872, 880 n.8 (Tex. Crim. App. 2016), *State v. Kerwick*, 393 S.W.3d 270, 274 (Tex. Crim. App. 2013). Instead, we must consider each of the facts in light of the totality of the circumstances, keeping in mind that "reasonable suspicion may exist even if those circumstances standing alone may be just as consistent with innocent activity as with criminal activity." *Kerwick*, 393 S.W.3d at 274.

Based upon the record before us, we conclude that Olson did not base his suspicion solely on Karr's presence at the location itself or solely on the time of day. Based on the totality of the circumstances, Olson had reasonable suspicion to stop and briefly detain Karr to investigate possible criminal activity. Thus, we hold that the trial court did not err by denying the motion to suppress, and we overrule Karr's two issues challenging that ruling under the United States and Texas Constitutions.

We affirm the trial court's judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  November 10, 2021