

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JILSON DUBAN AVELAR-RODRIGUEZ, | § | No. 08-24-00029-CR |
| Appellant, | § | Appeal from the |
| v. | § | 226th District Court |
| THE STATE OF TEXAS, | § | of Bexar County, Texas |
| Appellee. | § | (TC# 2020CR2721) |

### MEMORANDUM OPINION[1]

Appellant Jilson Duban Avelar-Rodriguez confessed to murdering Julia Wright and Nicholas Milanovich. After a trial during which his confession was admitted into evidence and played for the jury, Avelar-Rodriguez was convicted of capital murder. In this appeal, Avelar-Rodriguez argues that his confession was involuntary and that his trial counsel was ineffective for failing to move to suppress on that ground. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Because Avelar-Rodriguez does not challenge the sufficiency of the evidence, we provide only a brief summary of the case. On September 30, 2018, Julia Wright and Nicholas Milanovich

---

[1] This case was transferred pursuant to the Texas Supreme Court's docket equalization efforts. Tex. Gov't Code Ann. § 73.001. We follow the precedent of the Fourth Court of Appeals to the extent it might conflict with our own. *See* Tex. R. App. P. 41.3.

were shot and killed in their apartment. On the ground outside of their apartment, detectives found a tire iron and a small piece of a blue latex glove. The killer had apparently pried out a windowpane and crawled into the apartment, leaving a muddy boot print on the love seat near the window. A search of Avelar-Rodriguez's apartment, which was in the same complex as the victims', revealed a box of bullets that were the same as the spent shell casings found at the scene, a lockbox that apparently belonged to Wright, and a box of blue latex gloves. Phone records showed that shortly after the murders happened, Avelar-Rodriguez went to the residence of Melissa Cortez. Cortez confirmed that Avelar-Rodriguez was at her house the morning after the murders, and she testified that he showered, and gave her a bag with the clothes that he had worn the night before. That bag, later turned over to law enforcement, contained boots that appeared to match the print on the loveseat and blue latex gloves with a hole that matched the torn piece found outside of the apartment. Cortez also gave law enforcement a bottle of methadone prescribed to Wright that she said was in the lockbox that Avelar-Rodriguez took from Wright and Milanovich's apartment.

Detective Mark Duke interviewed Avelar-Rodriguez at the immigration detention center in Pearsall, Texas, where he was detained for immigration violations. Because Avelar-Rodriguez speaks Spanish, Department of Homeland Security Special Agent Joe Ibarra assisted Duke by interpreting. At the beginning of the interview, Duke asked Ibarra to read Avelar-Rodriguez his Miranda rights. As interpreted, Ibarra, read the following to Avelar-Rodriguez:

> This notice is called the notice of rights. Before you are asked any questions, it is my duty as a police officer to inform you of your rights and warn you of the consequences of using these rights.
>
> You have the right to remain silent. You do not have to make any oral or written statements to anyone. Any statement that you make will be used in evidence against you in a court of law or at trial. You have the right to have an attorney present to advise you before or during any interrogation [] by police officers or attorneys [] representing the state, okay? [Y]ou may have your own attorney present or if you

2

cannot hire an attorney, the court will [] appoint an attorney for you, free of charge, now or at any other time.

.    .    .

If you decide to talk to someone, you can and you can stop talking to them at any time you want. The above rights are [] continuing rights that may be invoked by you at any state of the proceedings.

Avelar-Rodriguez did not invoke his right to an attorney, his right to be silent, or ask to stop the interview at any time. Avelar-Rodriguez initially denied any involvement in the murders, but eventually admitted to breaking into the apartment and shooting both Wright and Milanovich. He told Duke that he did it under threat by Cortez, who he said was involved with a Mexican drug cartel.

Avelar-Rodriguez filed two motions to suppress. In his first, he made only a general statement that "[a]ny statements obtained from Defendant were obtained in violation of Article 38.22 of the Texas Code of Criminal Procedure and in violation of the rights of Defendant pursuant to the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 9, 10 and 19 of the Constitution of the State of Texas." He filed a second motion to suppress on the grounds that he had an immigration attorney and she was not contacted before Duke questioned him. At a pretrial suppression hearing, Ibarra was the only witness, and he was questioned about whether he knew at the time of the interrogation that Avelar-Rodriguez had an attorney. Avelar-Rodriguez argued, as he did in his second motion to suppress, that his confession was inadmissible because he was represented at the time by an attorney who had not been contacted. The trial court denied his motion to suppress. At trial, Avelar-Rodriguez re-urged his objection to admission of the confession, again on the ground that his immigration attorney "was not contacted to give her consent to him being interviewed in a murder investigation." The trial court overruled his objection, and the video of the interrogation was admitted into evidence and

3

published to the jury. A transcript of the interview, with translations, was also admitted into evidence.

The jury found Avelar-Rodriguez guilty of capital murder, and he was sentenced to life in prison. Tex. Penal Code Ann. § 19.03(A)(7) (offense of capital murder is committed if "a person murders more than one person [] during the same criminal transaction").

## II. ISSUES ON APPEAL

Avelar-Rodriguez raises four issues, that he labels "potential issues," on appeal. However, for three of the issues, he does not assert that the trial court committed error. In his first two issues, Avelar-Rodriguez argues that his confession was not made knowingly, intelligently or voluntarily and that its admission was harmful. However, he acknowledges that he did not argue voluntariness as a ground for suppression in the trial court. *Resendez v. State*, 306 S.W.3d 308, 317 (Tex. Crim. App. 2009) (holding that the appellant did not preserve his suppression issue because he argued different grounds for suppression in the trial court); Tex. R. App. P. 33.1(a)(1)(A) (to preserve error, a party must state the grounds for its requested ruling "with sufficient specificity to make the trial court aware of the complaint"). In his third issue, Avelar-Rodriguez discusses the argument for suppression that he made in the trial court—that his Sixth Amendment rights were violated because he was questioned without the presence of his immigration attorney. However, he also concedes that the Sixth Amendment did not give him the right to have his immigration attorney noticed and present for an interrogation regarding unindicted murders. The Sixth Amendment right to an attorney is "offense specific" and attaches only after prosecution has been initiated. *Rubalcado v. State*, 424 S.W.3d 560, 570–71 (Tex. Crim. App. 2014).

With these three issues, rather than attributing error to the trial court, Avelar-Rodriguez attributes error to his trial counsel. Avelar-Rodriguez states,

4

Based on the analysis of the relevant legal standards and case law, *the court did not err* in admitting the defendant's confession over the defense counsel's objection. Defense counsel waived the issue of whether the confession was knowingly, intelligently and voluntarily made since he did not bring this issue before the court. Defense counsel should have known that the Sixth Amendment right to counsel is offense-specific and did not extend to the interrogation in question . . . . (emphasis added).

These "points of error" serve only as arguments in support of Avelar-Rodriguez's fourth issue that his attorney provided ineffective assistance of counsel. We therefore overrule Avelar-Rodriguez's first three issues, and we analyze the voluntariness of his confession as it pertains to his attorney's failure to object on that basis.

## III.  ANALYSIS

### A.  Ineffective assistance of counsel- standard of review

To show reversible error based on ineffective assistance of counsel, "an appellant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the appellant." *Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005); *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To meet the first prong in this case, Avelar-Rodriguez must show that had his attorney moved to suppress his confession on the grounds that it was involuntary, his motion would have been granted. *Cotton v. State*, 480 S.W.3d 754, 757 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("To meet the deficiency prong of *Strickland* for failure to file a motion to suppress, the defendant must demonstrate that the motion likely would have been granted."); *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (en banc) ("[A]ppellant was still obliged to prove that a motion to suppress would have been granted in order to satisfy *Strickland*."); *Woolridge v. State*, No. 04-12-00402-CR, 2014 WL 667500, at *3 (Tex. App.—San Antonio Feb. 19, 2014, no pet.) (mem. op., not designated for publication) (same).

5

**B. Would a motion to suppress on the grounds of voluntariness have been granted?**

"Under the Due Process Clause and articles 38.21 and 38.22 of the Texas Code of Criminal Procedure, a confession must be 'voluntary' to be admissible." *Lopez v. State*, 610 S.W.3d 487, 494 (Tex. Crim. App. 2020); Tex. Code Crim. Proc. Ann. arts. 38.21 and 38.22. Before Duke began questioning Avelar-Rodriguez, Ibarra, who was serving as an interpreter, read the following to Avelar-Rodriguez: "This notice is called the notice of rights. Before you are asked any questions, it is my duty as a police officer to inform you of your rights and warn you of the consequences of *using* those rights" (emphasis added). During his questioning, Duke told Avelar-Rodriguez that he "would have to answer for what he did but, if there's a good reason, sometimes it's the difference in being put to death, or life in prison, or maybe thirty years in prison, instead of life." Duke also told Avelar-Rodriguez, "[i]t's been my experience that when people are remorseful and they take responsibility, juries feel like they may have learned their lesson and they are not as hard on them[.]" Avelar-Rodriguez argues that his confession was involuntary because these statements indicated that there would be negative consequences if he exercised his right to remain silent and a benefit if he confessed.

Avelar-Rodriguez points to cases that hold that when a suspect is told that his statements could be used "*for or against him*," any subsequent statement is *per se* inadmissible. *Dunn v. State*, 721 S.W.2d 325, 341 (Tex. Crim. App. 1986) (en banc), *abrogated by Creager v. State*, 952 S.W.2d 852 (Tex. Crim. App. 1997) (en banc); *Sterling v. State*, 800 S.W.2d 513 (Tex. Crim. App. 1990) (en banc). As reasoned by the Court of Criminal Appeals, a representation that a confession would be beneficial "holds out an inducement for making the confession[,]" making the confession "involuntary as a matter of law." *Dunn*, 721 S.W.2d at 341.

6

However, the rule relied on in *Dunn* has been abrogated. In *Creager*, the Court of Criminal Appeals expressly "disavow[ed] any implication in the *Dunn* opinion that the *per se* rule of inadmissibility that results from a violation of the warning statute applies to an officer's remarks made during the subsequent interrogation." *Creager*, 952 S.W.2d at 856. In other words, if the proper statutory warnings are given, statements made by law enforcement about the benefits of a confession do not automatically render the confession inadmissible but are a factor when determining voluntariness under the totality of the circumstances. *Id.* at 856. *Lopez*, 610 S.W.3d at 494 ("Involuntariness is reviewed under the Due Process Clause and articles 38.21 and 38.22 by examining the totality of the circumstances surrounding the confession.") "The ultimate question is whether the suspect's will was overborne." *Creager*, 952 S.W.2d at 856 (citing *Armstrong v. State*, 718 S.W.2d 686, 693 (Tex. Crim. App. 1985) (en banc)).

Avelar-Rodriguez does not dispute that he was given the required statutory warnings. Ibarra informed him that he had the right to remain silent, that his statements could be used against him, that he had the right to an attorney, and that he had the right to terminate the interview. Tex. Code Crim. Proc. Ann. art. 38.22, §§ 2, 3. Because he received the statutory warnings, his confession is not *per se* inadmissible. So, we must evaluate the totality of the circumstances to determine if his will was overborne, rendering his confession involuntary.

Ibarra told Avelar-Rodriguez that he was going to "warn [him] of the consequences of *using* these rights" (emphasis added). But he did not actually tell Avelar-Rodriguez of any negative consequences of exercising his rights and remaining silent. Instead, Agent Ibarra told Avelar-Rodriguez, correctly, that "[a]ny statement that you make will be used in evidence *against* you in a court of law or at trial" (emphasis added).

7

Appellant also argues that his confession was rendered involuntary by Duke's statement that punishment may be less severe if Avelar-Rodriguez had a "good reason" for his actions or if he took responsibility. A confession that is induced by a promise is inadmissible. *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993) (en banc). But "[i]n order to induce a confession, the promise must be (1) positive, (2) made or sanctioned by someone in authority, and (3) of such an influential nature that a defendant would speak untruthfully in response thereto." *Id.* Duke did not tell Avelar-Rodriguez that he would receive a lesser sentence if he had justification for or admitted his actions—just that he might. More importantly, he did not hold himself out as having the authority to make that decision. He told Avelar-Rodriguez that it would be "up for a jury to decide what happens to him." Duke's discussion of factors that could weigh in Avelar-Rodriguez's favor was "simply a statement of fact" and was not an unequivocal promise made by someone who purports to have authority to make such a promise. *Id.* at 254.

Avelar-Rodriguez claims that other facts, had his trial counsel asked about them, would have shown that his confession was involuntary. In his brief, he states that during the suppression hearing,

> [d]efense counsel did not inquire . . . of his client's level of education, understanding, his youth, sophistication, or how his incarceration for over a year could have affected the knowingly, intelligently and voluntariness of his confession, or the fact that he was from another country with different language and culture, the level of isolation he had been subjected to since his incarceration, whether his family had visited him given the distance of the facility to where his family lived, or whether he was even aware that an attorney was representing him, albeit allegedly in immigration proceedings, or whether his attorney had visited him[.]

Those factors may well have been relevant in a totality of the circumstances evaluation. "Claims of involuntariness under Article 38.22 can be, but need not be, predicated on police overreaching, and they could involve the 'sweeping inquiries into the state of mind of a criminal defendant who

8

has confessed[.]'" *Oursbourn v. State*, 259 S.W.3d 159, 172 (Tex. Crim. App. 2008) (quoting *Colorado v. Connelly*, 479 U.S. 157, 166–67 (1986)). But the answers Avelar-Rodriguez would have given to these questions are not in the record before us. "Ineffective assistance of counsel claims are not built on retrospective speculation; they must 'be firmly founded in the record.'" *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) (quoting *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

Avelar-Rodriguez has not shown, on this record, that "his will was overborne," making his confession involuntary. *Armstrong*, 718 S.W.2d at 693. Because he did not show that the trial court would have granted his motion to suppress his confession on the ground that it was involuntary, we overrule Avelar-Rodriguez's one issue that asserts trial court error.

## IV. CONCLUSION

Avelar-Rodriguez has not asserted that the trial court committed error and has not shown that he was provided ineffective assistance of counsel. We affirm the judgment below.

MARIA SALAS MENDOZA, Chief Justice

February 20, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.

(Do Not Publish)